616 So.2d 12 (1993)
Anna Rue CAMP, et al., Plaintiffs-Appellants,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant-Appellee.
No. 79712.
Supreme Court of Florida.
February 4, 1993.
Rehearing Denied April 13, 1993.
*13 Talbot D'Alemberte, Adalberto Jordan and Jonathan Sjostrom of Steel, Hector & Davis, Miami, for plaintiffs-appellants.
Elmo R. Hoffman of Brownlee, Hoffman & Jacobs, P.A., Orlando, and Gus H. Small, Jr. and William James Reedy of Small, White & Morani, P.C., Atlanta, GA, for defendant-appellee.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, amicus curiae, for The Academy of Florida Trial Lawyers.
McDONALD, Justice.
In Camp v. St. Paul Fire & Marine Insurance Co., 958 F.2d 340, 344 (11th Cir.1992), the United States Court of Appeals for the Eleventh Circuit certified the following questions of law:
(1) WHETHER, AS A MATTER OF LAW, A NAMED INSURED'S BANKRUPTCY AND DISCHARGE FROM LIABILITY PRIOR TO EXPOSURE TO AN EXCESS JUDGMENT, SUCH THAT THE NAMED INSURED WAS NEVER PERSONALLY LIABLE FOR ANY AMOUNT OF THE JUDGMENT, PRECLUDES AN INJURED PARTY'S OR BANKRUPTCY TRUSTEE'S SUBSEQUENT BAD FAITH CAUSE OF ACTION AGAINST AN INSURANCE COMPANY.
(2) WHETHER, AS A MATTER OF LAW, THE LANGUAGE OF A BANKRUPTCY CLAUSE IN A PARTICULAR INSURANCE POLICY, SUCH AS THE LANGUAGE AT ISSUE IN THIS CASE, CAN AUTHORIZE AN INJURED PARTY'S OR BANKRUPTCY TRUSTEE'S BAD FAITH ACTION AGAINST AN INSURANCE COMPANY, NOTWITHSTANDING THE FACT THAT THE NAMED INSURED WAS NEVER PERSONALLY LIABLE FOR ANY AMOUNT OF AN EXCESS JUDGMENT DUE TO THE NAMED INSURED'S BANKRUPTCY.
We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution. We conclude that a named insured's bankruptcy does not bar a bad faith action by the bankruptcy trustee.
This case arose out of a medical malpractice suit filed in late 1984 by Anna Rue Camp, the injured party, against Dr. Fariss Kimbell, the insured. St. Paul Fire and Marine Insurance Company issued a medical malpractice insurance policy to Dr. Kimbell with a policy limit of $250,000 per person injured. The policy contained the following language:
Once liability has been determined by judgement or by written agreement, the party making the claim may be able to recover under this policy, up to the limits of your coverage. But that party can't sue us directly or join us in a suit against the protected person until liability has been so determined. If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy.
In July 1986, Dr. Kimbell filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Northern District of Florida. Subsequently, Mrs. Camp's state lawsuit was halted pursuant to the automatic stay required by 11 U.S.C. § 362 (1988).
Between the time that Mrs. Camp filed her malpractice suit in 1984 and the time that Dr. Kimbell filed his bankruptcy case in 1986, Mrs. Camp twice offered to settle with St. Paul for Dr. Kimbell's policy limits. Although St. Paul was aware of Dr. Kimbell's deteriorating financial position, it rejected both of Mrs. Camp's settlement offers. On September 19, 1986, after Dr. Kimbell actually filed for bankruptcy, St. Paul refused Mrs. Camp's third offer to settle.
The bankruptcy court granted a discharge order on November 26, 1986 that shielded Dr. Kimbell from any personal liability for claims pending against him as of the date of his bankruptcy filing. In April 1987, the bankruptcy court authorized Mrs. Camp to proceed with her suit for the purpose of liquidating her claim in the bankruptcy case. At the same time, however, the bankruptcy court specifically ruled that Dr. Kimbell would be not personally liable for any judgment Mrs. Camp *14 obtained against him in her state court lawsuit.
In May 1987, Mrs. Camp tendered her fourth offer to settle for the policy limits, but St. Paul agreed to settle only for an amount lower than the $250,000 policy limit. When the settlement negotiations failed, the case proceeded to trial and the jury returned a verdict in Mrs. Camp's favor for more than three million dollars.[1] The bankruptcy court issued an order that allowed the excess judgment to be classified as a general, non-priority unsecured claim against Dr. Kimbell's bankruptcy estate. Pursuant to section 55.145, Florida Statutes (1991),[2] the state trial court granted Dr. Kimbell's motion for an order canceling and discharging the three-million-dollar judgment against him.
Mrs. Camp and Dr. Kimbell's bankruptcy trustee, John Venn, filed a bad faith action against St. Paul in state court, alleging that St. Paul failed in its obligation to settle the medical malpractice claim in good faith. The bad faith suit was ultimately removed to the United States District Court for the Northern District of Florida, and the district court granted summary judgment in favor of St. Paul. On appeal the United States Court of Appeals for the Eleventh Circuit found that this case involved issues of first impression under Florida law and, therefore, certified the questions now before us.
An insurer who assumes the defense of the insured also assumes a duty to act in good faith and with due regard to the interests of the insured. Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980). More specifically, in actions by third parties against the insured, the insurer must act in good faith and be diligent in its effort to negotiate a settlement. Auto Mutual Indemnity Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938). The insurer breaches its duty if it fails to act in good faith and the third party obtains a judgment against the insured for an amount in excess of the policy coverage. Id.
In the instant case, St. Paul contends that its alleged bad faith liability is extinguished because Dr. Kimbell was never harmed by or liable for the excess verdict. According to St. Paul, Dr. Kimbell was not affected by the excess judgment for two reasons. First, Dr. Kimbell received his discharge in bankruptcy before Camp's state court lawsuit ever proceeded to trial and, consequently, he was never liable for the adverse judgment in favor of Mrs. Camp. Second, the court canceled and discharged the judgment rendered against Dr. Kimbell pursuant to section 55.145.
St. Paul relies heavily on Fidelity & Casualty Co. v. Cope, 462 So.2d 459 (Fla. 1985), to support its argument that Dr. Kimbell was not personally harmed by the excess judgment.[3] In Cope, we held that, if an excess judgment has been satisfied, *15 absent an assignment of that cause of action prior to satisfaction, a third party cannot maintain an action for a breach of duty between an insurer and its insured. The release executed in Cope eliminated the harm that resulted from the excess judgment. In the instant case, however, there was no such release that eliminated the harm done to Dr. Kimbell's estate by St. Paul's failure to settle in good faith. Because St. Paul's duty extended to the bankruptcy estate and the estate was damaged by St. Paul's failure to settle within the policy limits, St. Paul's argument is flawed.
Under federal bankruptcy law, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541 (a)(1). Thus, in the instant case, the bankruptcy estate holds Dr. Kimbell's insurance policy as an asset because it was an interest of the debtor when the bankruptcy suit was filed in July 1986. The bankruptcy estate stood in the shoes of the debtor and, in effect, the estate became the insured. "[W]hatever claim  including potential and contingent claims  that the bankrupt owns at the time of his petition becomes a part of his estate, with the title thereto vested in the trustee." Palmer v. Travelers Ins. Co., 319 F.2d 296, 299-300 (5th Cir.1963) (emphasis added). We also note that Dr. Kimbell's liability policy with St. Paul included the following statement: "If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy." The language of the policy affirms that, even if the insured filed bankruptcy, St. Paul would bear the duty to defend and pay off a claim up to the policy limits. St. Paul thus assumed a duty to the bankruptcy estate. It knew, or should have known, that its failure to settle a claim within the policy limits could affect the bankruptcy estate. Accordingly, the bankruptcy trustee, as holder of the policy, would have any cause of action that any insured would have had.
The excess judgment against Dr. Kimbell harmed his bankruptcy estate by increasing the debt of the estate to the detriment of its creditors. The estate was damaged by the addition of Mrs. Camp as an additional unsecured creditor, a result that could have been avoided if St. Paul had settled her claim. As the trustee of the bankruptcy estate, Mr. Venn acted properly in filing a bad faith action to recoup the excess judgment for which the estate remains liable.
Therefore, as explained above, we determine that an action for bad faith may be claimed by the trustee of Kimbell's bankruptcy estate against St. Paul. We return the proceedings to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The judgment against Dr. Kimbell was affirmed on appeal. Kimbell v. Camp, 532 So.2d 1061 (Fla. 1st DCA 1988).
[2] This section provides in pertinent part as follows:

At any time after 1 year has elapsed since a bankrupt or debtor was discharged from his debts, pursuant to the act of congress relating to bankruptcy, the bankrupt or debtor, his receiver or trustee, or any interested party may petition the court in which the judgment was entered against such bankrupt or debtor for an order to cancel and discharge such judgment. .. . If it appears upon the hearing that the bankrupt or debtor has been discharged from the payment of that judgment or of the debt upon which it was recovered, the court shall enter an order canceling and discharging said judgment. The order of cancellation and discharge shall have the same effect as a satisfaction of judgment... .
[3] In Fidelity and Casualty Co. v. Cope, 462 So.2d 459 (Fla. 1985), Mrs. Cope was the passenger in a car driven by Ms. Gehan, who was insured by Hartford Accident and Indemnity Company. Mrs. Cope was killed when her car collided with a car driven by Mr. Brosnan, who was insured by Fidelity and Casualty Company of New York. Cope filed suit against Hartford based upon its bad faith failure to settle. Hartford settled the bad faith action for $50,000 in return for Cope's execution of a release and satisfaction of judgment in favor of Hartford, Gehan, and Brosnan. Fidelity was not named in the release. Cope thereafter filed suit against Fidelity for the $30,000 which remained unpaid on the judgment. Because Cope's excess judgment had been satisfied, we held that her estate could not bring a bad faith action against Fidelity.