John E. VENN, as Trustee of the Bankruptcy Estate of Fariss D. Kimbell, Jr., M.D., Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.

No. 89–30035–RV.

United States District Court, N.D. Florida, Pensacola Division.

May 9, 1994.

Robert G. Kerrigan, Robert G. Kerrigan P.A., Lefferts L. Mabie, Jr., Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, FL, Talbot D'Alemberte, Steel, Hector & Davis, Tallahassee, FL, for plaintiff Anna Rue Camp.

J. Dixon Bridgers, III, Bridgers, Gill & Holman, Pensacola, FL, Elmo R. Hoffman, Brownlee, Hoffman & Jacobs, P.A., Edward Clay Parker, pro hac vice, H. Joseph McGuire, pro hac vice, Parker, Johnson, Goodwin, McQuire & Burke, Orlando, FL, Mark S. Marani, pro hac vice, Small, White & Marani, Atlanta, GA, for defendant St. Paul Fire and Marine Ins. Co.

## ORDER

VINSON, District Judge.

Before the court is a question of law: If the Plaintiff prevails on his bad faith claim against the Defendant, is he entitled to prejudgment interest on the damages award? At stake is more than $2.3 million in simple interest, or more than $3.3 million if interest is compounded. Because the parties stated that meaningful settlement negotiations were unlikely to occur until this question is answered, I ordered briefs on the issue. After receiving briefs from both parties and having considered the arguments raised therein, I conclude that the Plaintiff is not entitled to prejudgment interest on a damages award.

## I. BACKGROUND

This is a bad faith action against an insurance company. The claim arises under Florida law, and this court's jurisdiction is based on diversity of citizenship. The Plaintiff, John E. Venn, is the trustee of the bankruptcy estate of Dr. Fariss D. Kimbell, Jr., a neurosurgeon. The Defendant, St. Paul Fire and Marine Insurance Company ("St. Paul"), was Dr. Kimbell's malpractice insurer during the early 1980's. Venn alleges that St. Paul acted in bad faith when it refused to settle a medical malpractice lawsuit brought against Dr. Kimbell by Anna Rue Camp. The malpractice suit resulted in a substantial judgment against Dr. Kimbell. Venn brought this bad faith action to recover that portion of the malpractice judgment for which Dr. Kimbell's bankruptcy estate remains liable.

A brief chronology of events will suffice for this order.[1] On December 10, 1984, Camp filed suit in state court against Dr. Kimbell for medical malpractice. St. Paul defended Dr. Kimbell as required by the insurance policy. In July 1986, well before the malpractice case went to trial, Dr. Kimbell filed a petition for relief under Chapter 7 of the Bankruptcy Code. Proceedings in the medical malpractice case were halted by the Bankruptcy Code's automatic stay of actions against the debtor [11 U.S.C. § 362].

In November 1986, Dr. Kimbell was granted a discharge by the bankruptcy court, which shielded him from personal liability for any claims pending against him on the date of his bankruptcy filing. The discharge included Camp's malpractice claim. The bankruptcy court later modified the automatic stay to allow Camp to proceed with her malpractice claim, so that Camp's claim could be liquidated. The bankruptcy court, consistent with the earlier discharge order, ruled that any judgment obtained by Camp would not be enforceable against Dr. Kimbell personally. Rather, such a judgment would be enforceable only against the bankruptcy estate.

St. Paul rejected four offers to settle the malpractice case for $250,000, which was the

---

1. The facts are set forth in greater detail in my order of February 12, 1991 [*Camp v. St. Paul Fire & Marine Ins. Co.*, 127 B.R. 879 (N.D.Fla.1991)], and in the Eleventh Circuit's opinion of April 16, 1992 [*Camp v. St. Paul Fire & Marine Ins. Co.*, 958 F.2d 340 (11th Cir.1992)].

limit of Dr. Kimbell's liability insurance. The case went to trial in June 1987, and resulted in a verdict for Camp of more than $3,300,000. St. Paul then paid Camp the policy limit of $250,000. The unpaid, excess portion of the judgment (hereinafter "the excess judgment"), in the fixed amount of $2,784,942.66, was allowed by the bankruptcy court as a general, non-priority unsecured claim of Camp against the bankruptcy estate. In doing so, the bankruptcy court again stated that Camp's claim could not be enforced against Dr. Kimbell personally. The Florida court entered an order canceling and discharging the judgment against Dr. Kimbell, in accordance with Section 55.145, Florida Statutes.[2] This order had the same effect as a satisfaction of judgment by Dr. Kimbell personally.

Venn, as trustee of the bankruptcy estate of Dr. Kimbell, then brought this bad faith action against St. Paul. The Supreme Court of Florida, in response to questions of law certified to it by the Court of Appeals for the Eleventh Circuit, held that Venn could bring a bad faith claim against St. Paul. *Camp v. St. Paul Fire & Marine Ins. Co.*, 616 So.2d 12, 15 (Fla.1993). The Florida court held that St. Paul's duty to act in good faith toward its insured, Dr. Kimbell, also extended to Dr. Kimbell's bankruptcy estate. Venn, as trustee of the bankruptcy estate, could bring a claim to redress harm done to the estate by St. Paul's alleged bad faith.

The excess judgment against Dr. Kimbell harmed his bankruptcy estate by increasing the debt of the estate to the detriment of his creditors. The estate was damaged by the addition of Mrs. Camp as an additional unsecured creditor, a result that could have been avoided if St. Paul had settled her claim. As the trustee of

the bankruptcy estate, Mr. Venn acted properly in filing a bad faith action to recoup the excess judgment for which the estate remains liable.

*Id.*

At the pretrial conference in this matter, I heard argument on the issue of what should be the proper measure of compensatory damages. In my judgment, the Supreme Court of Florida answered that question by implication in its opinion. By holding that the bankruptcy estate was harmed by the excess judgment and that Venn "acted properly in filing a bad faith action to recoup the excess judgment," the Florida court fixed the excess judgment as the measure of compensatory damages.

The question then becomes whether Venn would be entitled to prejudgment interest on the amount of the excess judgment if St. Paul is found to have acted in bad faith. The malpractice judgment against Dr. Kimbell was entered in June 1987, so that would be the date that the bankruptcy estate suffered the harm caused by St. Paul's alleged bad faith. Simple interest on the excess judgment of $2,784,942, computed at Florida's statutory rate of 12 percent per annum,[3] would amount to approximately $2.4 million as of June 1994.[4] If compounded annually, interest on the excess judgment would amount to more than $3.3 million.

## II.  *ANALYSIS*

■ In a diversity case, a federal district court must apply state law to determine if a successful claimant should recover prejudgment interest. *Royster Co. v. Union Carbide Corp.*, 737 F.2d 941, 948 (11th Cir.1984). Plaintiff's bad faith claim arises under Flori-

---

**2.** That section provides as follows:

At any time after one (1) year has elapsed since a bankrupt or debtor was discharged from his debts, pursuant to the Act of Congress relating to Bankruptcy, the bankrupt or debtor, his receiver or trustee, or any interested party may petition the Court in which the judgment was rendered against such bankrupt or debtor for an order to cancel and discharge such judgment.... If it appears upon the hearing that the bankrupt or debtor has been discharged from the payment of that judgment or of the debt upon which it was recovered, the

Court shall enter an order canceling and discharging said judgment. The order of cancellation and discharge shall have the same effect as a satisfaction of judgment....

§ 55.145, Fla.Stat. (1993).

**3.** Section 687.01, Florida Statutes, provides that "[i]n all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be 12 percent per annum...."

**4.** Trial of this case is set for the July 1994 trial term.

da law, so Florida law controls the prejudgment interest question.

Before 1985, the law of prejudgment interest in Florida was rather confusing. *See Royster Co., supra* ("What the Florida law is on prejudgment interest is far from clear."). The controlling principle seemed to be that prejudgment interest was awarded on claims that were "liquidated" on the date a loss was suffered, but not on claims that were "unliquidated." Courts struggled with the elusive distinction between "liquidated" and "unliquidated" claims. *Compare FDIC v. Carre*, 436 So.2d 227, 230 (Fla. 2d DCA 1983) (declining to award prejudgment interest; damages were "unliquidated" because they could not be computed except by resolving conflicting evidence, inferences, and interpretations) *with Bergen Brunswig Corp. v. Florida Dep't of Health and Rehab. Servs.*, 415 So.2d 765 (Fla. 1st DCA 1982) (a claim becomes "liquidated" and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date). The water was made even murkier by rulings that prejudgment interest could be awarded on "unliquidated" claims, but only if a jury determined the amount of interest. *See Royster Co., supra; Plantation Key Developers v. Colonial Mortgage Co.*, 589 F.2d 164, 170 (5th Cir.1979) (applying Florida law of prejudgment interest).

Much of the confusion has been eliminated by two opinions of the Supreme Court of Florida. The first is *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So.2d 212 (Fla.1985). In *Argonaut*, the court ruled that the dispositive question is not whether the amount of a loss was certain or uncertain as of the date of the loss. Instead, if a verdict fixes the amount of, *i.e.*, "liquidates," damages on a claimant's "out-of-pocket, pecuniary losses," prejudgment interest should be awarded from the date of the loss. *Id.* at 215.

*Argonaut* began when the negligence of a plumbing company caused an apartment building to be destroyed by fire. Argonaut, which insured the building, paid the owner of the building $249,000, which was the amount of the owner's loss. Argonaut then sued the plumbing company that had caused the fire and the plumbing company's insurers. Argo-

naut recovered $187,000, after the plumbing company was found to have been 75% at fault and the building's owner 25% at fault. The trial court awarded prejudgment interest to Argonaut. The district court of appeal reversed the grant of prejudgment interest, holding that the comparative negligence factor made the amount of damages uncertain and, thus, "unliquidated." 474 So.2d at 213.

The supreme court reversed the denial of prejudgment interest. The court began by tracing the origin of prejudgment interest law in Florida and by examining what it identified as the two alternative justifications for awarding prejudgment interest. One is that prejudgment interest serves as a penalty for the wrongful act of disputing a claim that is later found to be just and owing. The other is that prejudgment interest serves merely to make the claimant whole for the wrongful deprivation of its property. The liquidated/unliquidated distinction grew out of the "penalty theory," because it was felt to be unfair to punish a defendant for the failure to pay a sum which was uncertain, or "unliquidated." *Id.* at 215.

Florida's law of prejudgment interest embraced the "loss theory," not the "penalty theory." As a result:

> neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the plaintiff's property. Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor.

*Id.* The rule announced by the court is this: "[W]hen a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." *Id.* Argonaut was entitled to prejudgment interest because it had out-of-pocket, pecuniary losses from the date that it paid out funds to compensate its insured.

The *Argonaut* rule was clarified by the Supreme Court of Florida's recent opinion in *Alvarado v. Rice*, 614 So.2d 498 (Fla.1993).

There, the court held that a claimant is entitled to prejudgment interest only when it has suffered *actual loss of a vested property right* at some date prior to the entry of judgment. *Id.* at 499.

The precise question before the court in *Alvarado* was whether a claimant in a personal injury action should receive prejudgment interest on past medical expenses. Alvarado was injured by the negligence of Rice. Alvarado was awarded $46,000 in damages, of which $11,000 was compensation for past medical expenses. As of the date of the judgment, however, Alvarado had not actually paid her medical bills and she had not been charged interest on those bills. Alvarado argued that she was entitled to prejudgment interest for the damages awarded to her for past medical expenses, because those were actual damages which had a certain amount and were incurred at a specific date in the past.

The Supreme Court affirmed the lower courts' denial of prejudgment interest on the past medical expenses. The court began by citing the *Argonaut* rule that prejudgment interest should be awarded when it is determined that a claimant has suffered "actual, out-of-pocket loss at some date prior to entry of judgment." *Id.* at 499. The court explained that cases recognizing the right to prejudgment interest all involved the loss of a "vested property right," such as the destruction of a building and the payment of insurance proceeds [*Argonaut* ], commissions improperly withheld from a salesman [*Barnes Surgical Specialties, Inc. v. Bradshaw*, 549 So.2d 1189 (Fla. 2d DCA 1989) ], and a subcontractor's right, granted by a mechanics lien, to earned, unpaid compensation [*International Community Corp. v. Overstreet Paving Co.*, 493 So.2d 25 (Fla. 2d DCA 1986) ].

The court then applied this rule to Alvarado and found that she had not suffered an actual loss that would entitle her to prejudgment interest:

> She was not forced to use her private funds to pay medical bills incurred as a result of Rice's negligence. Had Alvarado actually paid her medical bills when they became due, she would be suffering the loss of a vested property right because she would be denied the use of her money. However, in the absence of such a payment by Alvarado, she is not entitled to prejudgment interest.

*Id.* at 499–500. The logic of the decision is straightforward: if prejudgment interest is intended to compensate for an out-of-pocket loss of property or funds, and not to punish the wrongdoer (a goal served by criminal penalties and punitive damages), one who has suffered no actual loss of funds or property should not receive interest.

■ Thus, the rule as announced by *Argonaut* and *Alvarado* is that a claimant is entitled to prejudgment interest if he or she has suffered an actual, out-of-pocket loss at some date prior to the entry of judgment. The actual loss will almost always be damage to property or the wrongful withholding of money. *See Insurance Co. of North Am. v. Lexow*, 937 F.2d 569, 571–72 (11th Cir.1991) (applying Florida law; owner of warehouse that was destroyed by fire was awarded prejudgment interest on insurance proceeds withheld by insurer); *Air Prods. & Chems., Inc. v. Louisiana Land & Exploration Co.*, 867 F.2d 1376, 1378–79 (11th Cir.1989) (applying Florida law; seller of ethane gas entitled to prejudgment interest on money found to be due it under terms of contract); *Cigna Prop. & Cas. Co. v. Ruden*, 621 So.2d 714 (Fla. 3d DCA 1993) (marine insurance policy obligated insurer to reimburse insured for costs and salvage expenses incurred, but no award of prejudgment interest for the cost of items not yet actually paid by insured); *Ferrell v. Ashmore*, 507 So.2d 691 (Fla. 1st DCA 1987) (home builder who prevailed on mechanics lien claim entitled to prejudgment interest on damages for labor and materials).

■ Applying the law set out in *Argonaut* and *Alvarado* to the facts of this case, I must conclude that Venn is not entitled to prejudgment interest on the excess judgment. Like the plaintiff in *Alvarado* who had incurred medical expenses but made no payment, Dr. Kimbell's bankruptcy estate has incurred a claim against it in the amount of the excess judgment, but has paid nothing on that claim. Because it has paid nothing on Camp's claim,

the bankruptcy estate has suffered no actual, pecuniary loss as a result of that claim. In fact, because Dr. Kimbell's bankruptcy estate is essentially a "no assets" estate, nothing (or virtually nothing) will be paid on Camp's claim unless Venn prevails on the bad faith claim.

▮ Moreover, like the plaintiff in *Alvarado* whose outstanding medical bills were not accruing interest, Camp's claim against the bankruptcy estate is not accruing interest. As of the date of the filing of Dr. Kimbell's bankruptcy petition, all claims against Kimbell stopped accruing interest. This is because, under Section 502 of the Bankruptcy Code, interest generally ceases to accrue against the debtor when a petition is filed. 11 U.S.C. § 502(b)(2); *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946). When Dr. Kimbell filed a bankruptcy petition in July 1986, all then-existing claims against him, including Camp's malpractice claim, ceased accruing interest.

▮ An exception to the general rule against the accrual of post-petition interest exists in the rare case when the debtor turns out to be solvent. Section 726(a)(5) of the Bankruptcy Code allows for post-petition interest to be paid to unsecured creditors if the principal amounts of all claims have been paid and there are still funds in the estate. 11 U.S.C. § 726(a)(5). Venn argues that this justifies awarding prejudgment interest on the bad faith claim. According to Venn, if the estate recovers prejudgment interest from St. Paul, the bankruptcy estate would then be solvent, so the interest could be passed on to Camp and the other unsecured creditors.

This argument puts the cart before the horse. At present, unsecured claims against the bankruptcy estate total $2,925,616; of that amount, Camp's claim comprises $2,784,-942. The assets of the bankruptcy estate consist of approximately $3000 cash, and the bad faith claim against St. Paul. The estate can be solvent only if Venn wins its bad faith claim and recovers the excess judgment *and* recovers prejudgment interest. This is because the principal amount of the bankruptcy estate's liabilities exceeds the principal

amount of its assets, even if the bad faith claim is valued at the full amount of the excess judgment. Camp (as well as the other unsecured creditors) would receive post-petition interest only if Venn is allowed to recover prejudgment interest (in which case the estate would be solvent). But that does not answer the real question, which is whether the law of Florida entitles Venn to prejudgment interest on the bad faith claim in the first place.

The issue before the court is not whether the Bankruptcy Code would permit post-petition interest to be distributed to Camp and the other unsecured creditors if prejudgment interest is awarded to Venn. It would. Rather, the prejudgment interest law of Florida supplies the dispositive issue: Has the bankruptcy estate suffered an actual, pecuniary loss, such that interest must be awarded to fully compensate the estate for the harm caused by St. Paul's failure to settle?

The answer to that question is "No." Prejudgment interest should not be tacked onto the bankruptcy estate's bad faith claim against St. Paul, because the operation of the Bankruptcy Code has prevented interest from accruing on Camp's claim against the bankruptcy estate. That, coupled with the fact that the bankruptcy estate has not actually paid Camp's claim, means that the bankruptcy estate has suffered no "actual, out-of-pocket loss" within the rule of *Argonaut* and *Alvarado*.

I do not find persuasive the other points made by Venn in support of his claim for prejudgment interest. First, Venn argues that "Florida law mandates the recovery of prejudgment interest in bad-faith excess liability insurance actions like this one." However, the two cases cited by Venn do not support that proposition.

*General Accident Fire & Life Assurance Corp. v. American Casualty Co.*, 390 So.2d 761 (Fla. 3d DCA 1980), was a bad faith action brought by an excess liability insurer, American, against a primary liability insurer, General. A child drowned in a swimming pool owned by Brown. The child's parents sued Brown and his two insurers: General,

which was Brown's primary insurer on a homeowner's policy, and American, the excess insurer. General made no effort to settle the case, despite American's demands that it do so. After the jury returned a verdict awarding the plaintiffs $700,000, the case was settled for $690,000. General, the primary carrier, paid its policy limit of $300,000, and American paid the remaining $390,000. *Id.* at 763.

American then sued General for bad faith failure to settle, and was awarded damages and prejudgment interest. The prejudgment interest award was affirmed on appeal. Unlike Venn in this case, American, the successful bad faith claimant, actually paid the excess judgment before suing for bad faith. As a result, American had incurred actual, out-of-pocket losses before it received a judgment on its bad faith claim. Thus, an award of prejudgment interest was necessary to compensate American fully for its loss. *General Accident* does not suggest that the successful bad faith claimant is always entitled to prejudgment interest, regardless of whether it has suffered actual pecuniary harm.[5]

The second case cited by Venn, *Auto Mut. Indem. Co. v. Shaw,* 134 Fla. 815, 184 So. 852 (1938), also provides no support for an award of prejudgment interest here. The bad faith claimant in that case prevailed at trial and was awarded damages and interest. The Supreme Court of Florida, however, held that the evidence was insufficient to support a finding of bad faith and reversed. The opinion does not mention the issue of prejudgment interest.

■ Venn also argues that bankruptcy law allows a bankruptcy trustee to recover pre-judgment interest on a state law claim that is an asset of the estate. That is an accurate statement of a general principle of law. It does not, however, justify an award of prejudgment interest when the applicable state law requires proof of an actual, out-of-pocket loss, as does the law of Florida, and the bankruptcy estate has suffered no such loss, as is the case here. I am not denying prejudgment interest because federal bankruptcy law prevents its award; it does not. Instead, I am denying prejudgment interest because Florida law does not authorize its award under the factual circumstances of this case.

Finally, I note that no injustice is done Mrs. Camp by denying prejudgment interest on a bad faith award. The only possible harm caused by St. Paul's failure to settle is to the bankruptcy estate. St. Paul's failure to settle hardly harmed Mrs. Camp; she repeatedly offered to settle her claim for $250,000, yet she ended up with a judgment in excess of $3,300,000. She has been paid in full by St. Paul the $250,000 (plus interest) that she was willing to settle for. Nor is there injustice in making Camp wait to collect the proceeds of the excess judgment while the bankruptcy trustee litigates the bad faith claim. For, if Venn prevails on his bad faith claim, this would establish that St. Paul, if it had acted in good faith, would have settled the case for the $250,000 offered by Camp.

In short, St. Paul's "bad faith," if proven, will result in a substantial windfall to Mrs. Camp: she would recover close to $3,000,000 on a claim that she was prepared to settle for one-twelfth that amount. It is for that rea-

5. A similar result was reached by a federal court applying the law of Georgia in *Great Am. Ins. Co. v. International Ins. Co.,* 753 F.Supp. 357, 364–65 (M.D.Ga.1990). This case, like *General Accident,* involved a bad faith claim by an excess liability insurer against the primary liability insurer. Great American, the primary insurer, refused to settle a wrongful death claim brought against its insured. Great American refused several offers from the wrongful death plaintiff to settle within the $500,000 limits of the primary liability policy. International, which insured liabilities in excess of $500,000, up to $2,000,000, recommended strongly that Great American accept the settlement offers. The jury returned a verdict for the plaintiff and awarded $4,100,000 in damages. The case was then settled for $1,000,000. International paid its excess portion of the settlement amount ($500,000) and then sued Great American for bad faith failure to settle. International prevailed on its bad faith claim and was awarded $500,000 in damages and prejudgment interest on that amount, calculated from the date that International had paid its loss ($500,000) into the settlement fund. Like the successful bad faith claimant in *General Accident,* International had actually paid the excess judgment before prevailing on its bad faith claim. International, like the claimant in *General Accident,* had incurred an out-of-pocket loss, so interest was required to redress fully that loss.

son that Venn's suggestion that prejudgment interest should be awarded because it will ultimately flow to Mrs. Camp is a distraction from the proper focus. The real issue is what harm did St. Paul's failure to settle cause the bankruptcy estate. The estate has paid out no funds on Camp's claim, so interest is not necessary to compensate for the time value of money. Nor has post-petition interest been accruing against the estate on Camp's claim.

### III. CONCLUSION

The law of Florida entitles a claimant to prejudgment interest if he has suffered an actual, out-of-pocket loss at some date prior to the entry of judgment. That is the law applicable to Venn's bad faith claim against St. Paul. The bankruptcy estate has suffered no actual pecuniary loss so as to warrant the payment of interest to make the estate whole. The bankruptcy estate has not expended funds to satisfy Camp's claim, nor has Camp's claim been accruing interest against the bankruptcy estate.

The Supreme Court of Florida has ruled that the bankruptcy estate has been harmed by the addition of the excess judgment as a claim against the estate. The measure of the harm done the estate should be the measure of St. Paul's liability if it is found to have acted in bad faith. Interest should not be awarded when the estate has not been harmed beyond the actual amount of the excess judgment. Venn's argument that the court must automatically award prejudgment interest is incorrect. Without proof of actual loss of property or funds, a claimant is not entitled to prejudgment interest under Florida law. Otherwise, prejudgment interest would be added to every compensatory damages award, and that is not the law of Florida.

For these reasons, I conclude that Venn will not be entitled to prejudgment interest on the damages award (which I have determined to be the amount of the excess judgment) if he prevails on his bad faith claim.

DONE AND ORDERED.