**Homer McCLARTY, as trustee in, bankruptcy for Maridarlene FORTNEY, Plaintiff,**

v.

**Dale GUDENAU and Sullivan, Ward, Bone, Tyler & Asher, P.C., Defendants.**

**No. 93–CV–73427–DT.**

United States District Court, E.D. Michigan, Southern Division.

Jan. 4, 1995.

---

Lawrence Charfoos, Detroit, MI, for plaintiff.

Morton Collins, Southfield, MI, for defendants.

## OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM SEEKING EXCESS JUDGMENT IN DAMAGES

ROSEN, District Judge.

### I. INTRODUCTION

On June 11, 1993, Plaintiff, a Chapter 7 bankruptcy trustee, brought this legal malpractice suit on behalf of the Debtor and her bankruptcy estate. The suit alleged negligence on the part of the Debtor's counsel and his law firm in their representation of the Debtor who was a defendant in an automobile negligence case in state court which resulted in the entry of a $1,000,000 sole liability judgment against the Debtor. Because the Debtor had only $250,000 in insurance coverage, and the state court jury found the Debtor was not operating in the scope of her employment at the time of the accident and, therefore, the Debtor's employer had no liability, the Debtor faced personal exposure of $750,000. It was this exposure which prompted her filing of bankruptcy.

After extensive discovery, Defendants moved for summary judgment. This Court denied Defendants' motion on October 7, 1994, and scheduled this case for trial. *See McClarty v. Gudenau*, 173 B.R. 586, 605 (E.D.Mich.1994).

Immediately before trial, Defendants moved for the first time to preclude Plaintiff from seeking as damages the $750,000, which was still part of the unsatisfied judgment

against the Debtor in the underlying personal injury case, on the grounds that the December 30, 1992 discharge of this debt by the bankruptcy court nullified this damage claim. *See In re Fortney*, 92–11134–S, Dkt. No. 12 (Shapero, J.).[1] It was the Defendants' position that since the $750,000 debt had been discharged, the Debtor could not have suffered "damages" in this amount by virtue of the alleged malpractice. Realizing the novelty of this issue and its impact on the case, the Court ordered the parties to provide further briefing on the matter.

After reviewing the briefs submitted by counsel and conducting its own research, the Court concludes that Plaintiff is, indeed, barred from recovering these damages. This memorandum opinion and order sets forth the reasoning behind this ruling.

## II. *DISCUSSION*

■ It is undisputed that Plaintiff, as the bankruptcy trustee, assumed from the Debtor the right to pursue the legal malpractice claim that makes up this suit. *See* 11 U.S.C. § 541(a)(1) (stating that the bankruptcy estate created by the filing of a bankruptcy petition consists of, *inter alia*, "all legal or equitable interests of the debtor in property as of the commencement of the case"); 11 U.S.C. § 704 (granting the bankruptcy trustee the power to "collect and reduce to money the property of the estate for which such trustee serves"). Equally well-settled is the fact that when a trustee assumes a debtor's cause of action, he "obtains rights of action belonging to the bankrupt *subject to the same defenses or limitations that a defendant might have asserted against the bankrupt himself.*" *See In re Giorgio*, 862 F.2d 933, 936 (1st Cir.1988) (Breyer, J.) (emphasis

added). *See also* 4 *Collier on Bankruptcy* ¶ 541.10[1] (Lawrence P. King ed. 1994) ("In all cases where the trustee seeks to assert or enforce the debtor's right of action against another, he stands in the debtor's shoes regarding defenses to the action."). *Cf.* M.C.L. § 440.9318(1)(b) ("[T]he rights of an assignee are subject to: ... (b) Any ... defense or claim of the account debtor against the assignor....").

■ One of the elements that Plaintiff must prove to succeed in his malpractice claim is actual damages suffered by the tort victim—in this case, the Debtor. *See Coleman v. Gurwin*, 443 Mich. 59, 503 N.W.2d 435, 436–37 (1993) (noting that one of the elements in a legal malpractice claim is "the fact and extent of the injury alleged").[2] However, as pointed out by Defendants, the Debtor no longer suffers from the excess judgment by virtue of her discharge in bankruptcy. *See* 11 U.S.C. § 524(a) ("A discharge in a case under this title—voids any judgment at the time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any [dischargeable] debt...."). Therefore, Plaintiff in this case will be unable to prove damages in the amount of the excess judgment because the Debtor, in whose shoes Plaintiff stands, no longer owes this debt as a result of her discharge.

What law the Court and the parties have been able to find on the effect of a discharge on legal malpractice damages available to a bankruptcy trustee supports this conclusion. In *In re R.H.N. Realty Corp.*, 84 B.R. 356 (Bankr.S.D.N.Y.1988), a Chapter 7 trustee brought suit against a partnership seeking indemnification for a judgment owed by the debtor on the grounds that the agency rela-

---

1. Prior to the filing of Defendants' motion to preclude the Plaintiff from recovering these damages, the Court was unaware of the Debtor's discharge in bankruptcy.

2. Plaintiff has attempted to argue that the bankruptcy estate is also a victim of Defendants' malpractice because it is still liable for the excess judgment despite the Debtor's personal discharge. *See, e.g., In re Lembke*, 93 B.R. 701, 702 (Bankr.N.D.1988). However, the bankruptcy estate and Defendants never entered into an attorney-client relationship, another of the prerequi-

sites for bringing a legal malpractice suit in Michigan. *See Coleman, supra; cf., e.g., Moorhouse v. Ambassador Ins. Co.*, 147 Mich.App. 412, 383 N.W.2d 219, 221 (1985) (holding that legal malpractice claims are personal to the client and, therefore, not assignable), *ap. denied*, 425 Mich. 856 (1986). This fact, combined with the well-settled law that a bankruptcy trustee is bound by the defenses against the Debtor, makes this Court unwilling to hold that the bankruptcy estate can recover any damages for malpractice to which the Debtor is not entitled.

tionship between the debtor and the partnership warranted such relief. The court quickly rejected this claim:

> In the third claim of the complaint, the trustee alleges that Haverstraw [Associates] is obligated to indemnify the debtor and to pay the deficiency judgment owed by the debtor to the co-plaintiff [and judgment holder] Rednel. The debtor has not paid the deficiency judgment and will not pay any portion of that judgment because this a no-asset case. Therefore, there is not, nor will there be, any indemnification claim by the trustee against the nondebtor defendants. The trustee is simply attempting to collect the deficiency claim against these defendants for the benefit of Rednel. This function is not one of the trustee's duties under 11 U.S.C. § 704. Accordingly, the trustee has no standing to assert the causes of action in the second and third claims in the complaint and this court lacks jurisdiction to hear them.

84 B.R. at 360–61. *Cf. Frankenmuth Mut. Ins. Co. v. Keeley*, 436 Mich. 372, 461 N.W.2d 666, 667 (1990) (holding that recovery against an insurer for bad faith rejection of a settlement was limited to the amount of the judgment actually collectible against the insured). *R.H.N.* and *Keeley*, then, support Defendants' contention that if a party directly responsible for a debt will not pay it, then creditors will also be unable to recover the debt from indirectly liable third parties.

*Murphy v. Stein*, 156 A.D.2d 546, 549 N.Y.S.2d 53 (App.Div., 2d Dep't 1989), *ap. dismissed without op.*, 75 N.Y.2d 946, 555 N.Y.S.2d 692, 554 N.E.2d 1280 (1990), also supports Defendants' contention that the Debtor's discharge in this case undermines her bankruptcy trustee's claims. In *Murphy*, plaintiff brought a legal malpractice action against his former counsel on the grounds that counsel's malfeasance in a divorce action caused him damages. The judgment in the divorce action stated that plaintiff would receive, after the deduction of certain expenses, some 25% of the proceeds from any future sale of the marital home.

The judgment that was entered, however, erroneously stated that all expenses arising from the sale of the house would be deducted solely from the plaintiff's share of the sale proceeds. Plaintiff's counsel failed to detect this error. 549 N.Y.S.2d at 53.

According to the plaintiff in *Murphy*, he relied on the erroneous divorce judgment in selling his interest in the marital home for a mere $1,500. He also claimed that his counsel's error prompted him to later file in bankruptcy. Plaintiff had almost $21,000 in debt discharged as a result of his bankruptcy petition. Importantly, the maximum equity that plaintiff had in the marital home was $22,000. 549 N.Y.S.2d at 53.

The trial court in the malpractice action entered summary judgment on behalf of defendant/counsel because plaintiff could not show any actual damages resulting from counsel's alleged malpractice. After noting that proof of actual damages was an element in a legal malpractice claim, and after listing the considerations in deciding a summary judgment motion, the appellate court affirmed the trial court's decision:

> When the foregoing principles are applied to this case, it must be concluded that the Supreme Court properly awarded summary judgment to the defendant. As the defendant contends, the plaintiff's own contentions and supporting papers establish that he has not suffered the requisite "actual damages" ... necessary to sustain his cause of action for legal malpractice. Since, by virtue of the sale of his equity interest [for $1,500] and discharge in bankruptcy [of some $21,000 in debt], the plaintiff ultimately received a benefit of over $22,000—a sum which exceeded his alleged interest in the marital premises—the record establishes, as a matter of law, that he sustained no damage attributable to the alleged malpractice of the defendant.... Accordingly, as there remain no questions of fact with regard to an essential element of the plaintiff's cause of action, the defendant's motion for summary judgment was properly granted.[3]

549 N.Y.S.2d at 55 (citations omitted). *Murphy*'s reasoning, then, further suggests that

---

3. The *Murphy* court seems not to have considered plaintiff's implicit argument that he suffered damages as a result of filing in bankruptcy. The

parties have not cited, nor has this Court seen, any Michigan cases limiting the scope of typical tort damages that a plaintiff can recover in a

Debtor's discharge from bankruptcy mitigates her damages—and, thus, those of Plaintiff/trustee—for any legal malpractice by Defendants.

Two cases which might be read to support the Plaintiff's position that he can proceed with collecting damages for the excess judgment regardless of the discharge are distinguishable. In *Camp v. St. Paul Fire & Marine Ins. Co.*, 616 So.2d 12 (Fla.1993), the Florida Supreme Court held that a bankruptcy trustee could bring a suit against an insurance company alleging a bad faith refusal to settle a medical malpractice claim even though the insured/doctor had been discharged from the underlying excess judgment by the bankruptcy court. The *Camp* court held that the bankruptcy estate was the insured for purposes of the bad faith action, and, thus, the discharge of the debtor/insured had no effect on the amount of recovery available to the estate. 616 So.2d at 15.

The crucial distinction between *Camp* and this case, however, is that the insurance policy in the former case had a special bankruptcy clause, which read: "If the protected person or his or her estate goes bankrupt or becomes insolvent, we'll still be obligated under this policy." 616 So.2d at 15. The *Camp* court interpreted this provision as follows:

> The language of the policy affirms that, even if the insured filed bankruptcy, St. Paul would bear the duty to defend and pay off a claim up to the policy limits. *St. Paul thus assumed a duty to the bankruptcy estate.* It knew, or should have known, that its failure to settle a claim within policy limits could affect the bankruptcy estate. Accordingly, the bankruptcy trustee, as holder of the policy, would have any cause of action that any insured would have had.

616 So.2d at 15 (emphasis added).

In the instant case, as noted *supra* n. 2, Defendants in no way assumed any duty or

established any relationship with the Debtor's bankruptcy estate. Such an attorney-client relationship is another essential element of a malpractice claim. Thus, while the excess judgment remains with the estate, there is no way that Plaintiff/trustee can force Defendants to pay for it through bringing a malpractice claim solely on behalf of the estate.

*Green v. Welsh*, 956 F.2d 30 (2d Cir.1992) is also distinguishable. In that case, the Second Circuit permitted a tort creditor to pursue an action against discharged debtors, but only to the extent that their insurance carrier would be liable for damages to the maximum of its policy. *Green* relied upon 11 U.S.C. § 524(e), which states "discharge of a debt of the debtor does not affect the liability of any other entity for such debt." 956 F.2d at 35.[4]

*Green* is different from this case, however, because the extent of Defendants' malpractice liability to the trustee as an "insurer" of the Debtor is, under Michigan malpractice law, the Debtor's actual damages—not an amount set in an insurance policy or other indemnity agreement. Thus, *Green* does not really address the inquiry that this Court must resolve, namely, what is the extent of *the Debtor's* actual damages at the time of trial.

Plaintiff suggests that the only way to make the Debtor whole in this case is to effectively undo the bankruptcy by permitting this action to go forward on all of her damages at the time immediately before her petition filing. Only then, Plaintiff argues, will she be in as good a position as if the alleged malpractice had not been committed because her bankruptcy can be fully resolved with no lasting impact on her or her creditors.

Plaintiff has not cited, nor has this Court found, any authority in support of this posi-

---

legal malpractice action. Thus, the Court sees no reason on the basis of *Murphy* to preclude Plaintiff in this case from presenting proofs of any credit injury suffered by the Debtor as a result of her bankruptcy filing. The Court also believes that Plaintiff should be allowed to present any proofs he has on emotional damages

sustained by the Debtor caused by Defendants' alleged malpractice.

4. The Court has been unable to find any cases applying this section of the Bankruptcy Code to legal malpractice cases.

tion. Additionally, if the Debtor recovers damages for her credit and emotional injuries, then these, combined with her discharge, would place her in the same position as if Plaintiff's suggested make-whole remedy were followed—albeit at much less cost to Defendants. The Court is also unwilling at this late date to ignore, in essence, the bankruptcy filing and discharge in determining the scope of the Debtor's damages.

Plaintiff also argues that if the Court does not permit him to proceed with the $750,000 damage claim, he will have no choice but to undo the bankruptcy, reinstate the debt, and have the Debtor pursue her malpractice claim herself in state court.[5] This, of course, is his option; but it does not change the issue of what are the Debtor's damages in her current posture.

## III. CONCLUSION

The Court's analysis of the statutes, case law and secondary materials suggests that, indeed, the $750,000 excess judgment against the Debtor is not recoverable by the Plaintiff/Trustee in this case. Plaintiff by law has nothing more and nothing less than what the Debtor has in the way of damages, and, by virtue of her discharge, she no longer suffers any direct economic loss from the excess judgment. Plaintiff will be allowed, however, to introduce proofs on any injuries that the Debtor suffered as a result of Defendants' alleged malpractice in the form of damage to her credit rating and emotional well-being.

---

**5.** Of course, if the plaintiff were to pursue this course of action and, thereby, effectively reinstate the $750,000 debt, this would create a serious question as to the proximate cause of this element of damages. Arguably, the intervening proximate cause of the damages would be the dismissal of the bankruptcy and reinstatement of the debt.