United States Court of Appeals,

Eleventh Circuit.

Nos. 94-3423, 95-2000.

John E. VENN, as Trustee of the Estate of Fariss D. Kimbell, Jr., M.D., Plaintiff-Appellant,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee.

John E. VENN, as Trustee of the Estate of Fariss D. Kimbell, Jr., M.D., Plaintiff-Appellee,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellant.

Nov. 20, 1996.

Appeals from the United States District Court for the Northern District of Florida. (No. 89-30035/LAC), Lacey A. Collier, Judge.

Before BIRCH, Circuit Judge, GODBOLD, Senior Circuit Judge, and O'KELLEY[*], District Judge.

BIRCH, Circuit Judge:

This diversity medical malpractice insurance case has spanned twelve years and involved the participation of twenty-seven judges. It is now before us for the second time. The issues presented on appeal are: (1) whether a Chapter 7 bankruptcy trustee can assert a bad faith claim against an insurer when the underlying cause of action accrued after the named insured was discharged in bankruptcy; (2) if such a claim is found to be cognizable, what is the measure of recovery; and (3) whether the bankruptcy trustee is entitled to prejudgment interest. The district court ruled that the trustee can assert such a claim, the measure of recovery is the

[*]Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

amount of the judgment in excess of policy limits, and the trustee is not entitled to prejudgment interest. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.

## I. BACKGROUND

The general factual background for this case is described in detail in *Camp v. St. Paul Fire and Marine Ins. Co.,* 958 F.2d 340, 344 (11th Cir.1992) (*Camp I* ). We therefore summarize briefly the facts and rulings pertinent to the issues before us. Defendant, St. Paul Fire and Marine Insurance Company ("St. Paul"), is the insurer of Dr. Fariss Kimbell, a neurosurgeon who became bankrupt in 1986. Two years prior to the filing of Kimbell's bankruptcy petition, St. Paul assumed Kimbell's defense in a medical malpractice suit filed by Anna Rue Camp ("Camp") in Florida state court. Camp offered to settle the medical malpractice suit for policy limits, $250,000, on several occasions both before and after Kimbell's petition was filed. St. Paul rejected these offers and the case proceeded to trial after the bankruptcy court lifted the automatic stay mandated by 11 U.S.C. § 362. The jury returned a verdict of more than three million dollars against Kimbell. The bankruptcy court ordered that the excess judgment obtained by Camp be classified as a general, non-priority, unsecured claim against Kimbell's bankruptcy estate but specified that the judgment could not be enforced against Kimbell personally.

Camp and Kimbell's bankruptcy trustee, John E. Venn ("Venn" or "trustee"), next commenced a bad faith action against St. Paul in Florida state court. St. Paul removed the case to the United

States District Court for the Northern District of Florida.  On cross-motions for summary judgment, the district court dismissed the case and held that St. Paul could not be liable for bad faith refusal to settle because its insured—Kimbell—was bankrupt and could not be held personally liable for the excess judgment.  On appeal, we certified the following question to the Florida Supreme Court:

> Whether, as a matter of law, a named insured's bankruptcy and discharge from liability prior to exposure to an excess judgment, such that the named insured was never personally liable for any amount of the judgment, precludes an injured party's or bankruptcy trustee's subsequent bad faith cause of action against an insurance company.

*Camp I,* 958 F.2d at 344.[1]  In response, the Florida Supreme Court held that "an action for bad faith may be claimed by the trustee of Kimbell's bankruptcy estate against St. Paul."  *Camp v. St. Paul Fire and Marine Ins. Co.,* 616 So.2d 12, 15 (Fla.1993) (*Camp II* ).  The court reasoned that the bankruptcy estate held Kimbell's insurance policy as an asset at the time he filed for bankruptcy.  Therefore, St. Paul's duty of good faith extended to the estate which "stood in the shoes of the debtor and, in effect, ... became the insured."  *Id.*  The court explained further that the excess judgment against the bankrupt insured harmed the estate by increasing its debt to the detriment of its creditors and concluded that "Mr. Venn acted properly in filing a bad faith action to recoup the excess judgment for which the estate remains liable."  *Id.*

---

[1]A second question certified to the Florida Supreme Court involved the construction of particular policy language and is not repeated here.  *See Camp I,* 958 F.2d at 344.

Accordingly, we reversed the district court's dismissal of Venn's bad faith action and affirmed the dismissal of Camp's action. *Camp v. St. Paul Fire and Marine Ins. Co.,* 989 F.2d 428 (11th Cir.) (*Camp III* ), *cert. denied,* 510 U.S. 964, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993). On remand, the case was set for trial. Before trial, the district court heard arguments on the measure of compensatory damages. It ruled that the Florida Supreme Court had answered this question by implication in its opinion and fixed the amount of excess judgment as the measure of compensatory damages. *Venn v. St. Paul Fire and Marine Ins. Co.,* 169 B.R. 735, 737 (N.D.Fla.1994) ("*Venn I* "). The court held, however, that Venn would not be entitled to prejudgment interest[2] on these damages because the estate did not suffer any "out-of-pocket" expenses. *Id.* at 742. Trial commenced on July 18, 1994. The jury returned a verdict finding St. Paul acted in bad faith and, as instructed, awarded as compensatory damages the amount of the excess judgment ($2,784,942.66). The court, however, granted from the bench judgment as a matter of law in favor of St. Paul on the issue of punitive damages.[3] St. Paul also timely filed motions for judgment as matter of law or, in the alternative, for a new trial or to alter or amend the judgment on the issue of liability. The court denied these motions and entered judgment in favor of Venn. *Venn*

---

[2]As of June 1994, the prejudgment interest on the excess judgment amounted to $2.4 million (simple interest) or to more than $3.3 million if compounded annually. *Venn I,* 169 B.R. at 737.

[3]The parties had agreed in the pretrial conference to bifurcate the trial and that the issue of punitive damages would not be submitted to the jury until after it returned a verdict on liability. R-6-217-2.

*v. St. Paul Fire and Marine Ins. Co.,* 173 B.R. 759, 769 (N.D.Fla.1994) ("*Venn II* ").

St. Paul appeals the denial of its post-trial motions. Venn cross-appeals on the grounds that the court erred in concluding that Venn is not entitled to prejudgment interest and in granting St. Paul judgment as a matter of law on the issue of punitive damages. Based on our independent review of the record, we conclude that Venn's challenge to the court's ruling with respect to punitive damages is meritless. Accordingly, we affirm the judgment of the district court as to that issue. The remaining issues raised in these consolidated appeals are discussed below.

## II. DISCUSSION

### A. *St. Paul's Post-trial Motions*

St. Paul raises numerous contentions on appeal. Two of these contentions warrant some discussion.[4] First, St. Paul asserts that the district court should not have applied the *Camp II* decision of the Florida Supreme Court to this case because it is based on an erroneous interpretation of federal bankruptcy law. Second, St. Paul submits that the district court erred further by misinterpreting the Florida Supreme Court's holding in *Camp II.* St. Paul's contentions raise questions of both federal and state law. "The district court's conclusion[s] of [federal] law [are] subject to complete and independent review by this court." *In re*

---

[4]St. Paul argues that there was insufficient evidence introduced at trial to prove that it acted in bad faith and that a new trial should have been granted because the district court made several erroneous evidentiary rulings and refused to give five jury instructions requested by St. Paul. We reject these contentions for the reasons set forth in the district court's opinion. *See Venn II,* 173 B.R. at 767-70.

*Sure-Snap Corp.,* 983 F.2d 1015, 1017 (11th Cir.1993). We also review the district court's determinations of state law *de novo. Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Insurance Co. of N. Am. v. Lexow,* 937 F.2d 569, 571 (11th Cir.1991).

1. The *Camp II* Decision

The district court correctly rejected St. Paul's invitation not to follow the Florida Supreme Court's *Camp II* decision. The district court was required to do so for two reasons. First, the court was acting under our mandate to conduct "further proceedings consistent with this opinion *and that of the Florida Supreme Court.*" *Camp III,* 989 F.2d at 429 (emphasis added).

> A district court when acting under an appellate court's mandate, "cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon a matter decided on appeal; or intermeddle ... further than to settle so much as has been remanded."

*Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1510-11 (11th Cir.1987) (en banc) (quoting *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895)), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988). [5] Second, as discussed below, the district court is *required* to follow the Florida Supreme Court's decision on an issue of Florida

---

[5]The district court recognized its duty to follow our mandate, but it sharply criticized the Florida Supreme Court's *Camp II* decision. *Camp II* was decided pursuant to a certification from this court asking the Supreme Court of Florida to advise this court on an unsettled question of state law. When a state court responds to a request for a determination of an unsettled question of state law, and the federal court receives an answer, it is hardly appropriate for a federal court to question the correctness of the answer.

law under the principles of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

St. Paul argues, however, that *we* should revisit the *Camp* decisions because the Florida Supreme Court misinterpreted federal bankruptcy law by reasoning that Kimbell's potential bad faith claim became a part of his estate by operation of 11 U.S.C. § 541(a)(1).[6]  *See Camp II,* 616 So.2d at 15 (citing *Palmer v. Travelers Ins. Co.,* 319 F.2d 296, 299-300 (5th Cir.1963)).  Under the law of the case doctrine, both the district court and the appellate court are generally bound by a prior appellate decision of the same case.  *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir.1984).  The doctrine promotes finality, assures the obedience of the district court to appellate decisions, and avoids waste of judicial resources.  *See id.* at 1440.  Law of the case, however, is not a limitation on the court's power, "but rather is an expression of good sense and wise judicial practice." *DeLong Equip. v. Washington Mills Electro Minerals Corp.,* 990 F.2d 1186, 1196-97 (11th Cir.) (internal quotations omitted), *modified on other grounds,* 997 F.2d 1340 (11th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993);  *see also Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983).  The doctrine, thus, is subject to exceptions and "does not apply to bar reconsideration of an issue when (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to

---

[6] 11 U.S.C. § 541(a)(1) provides that a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Wheeler,* 746 F.2d at 1440 (quoting *United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982)).

The first two exceptions are not applicable here. St. Paul contends, however, that our decision in *Camp III* mandating adherence to the Florida Supreme Court's decision in *Camp II* was clearly erroneous. Citing *Sun Insurance Office, Ltd. v. Clay,* 319 F.2d 505 (5th Cir.1963),[7] *rev'd on other grounds,* 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964), St. Paul argues that a federal appellate court is *required* to "ignore the holding of the state court if the decision was based upon ... erroneous determinations of federal law." Appellant-St. Paul Brief at 12 n. 8 (No. 95-2000). Thus, St. Paul suggests, *Camp III* was incorrectly decided because *Camp II* was based on an erroneous interpretation of federal law.

St. Paul's reading of *Clay,* however, evinces a misunderstanding of our holding in that case. The issue in *Clay* was whether a Florida statute that invalidates an insurance suit clause[8] applies to a policy issued in Illinois. The policy holder had moved to Florida after the policy was issued and later brought a diversity action on a property loss that occurred in Florida.

---

[7]We have adopted the decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, as binding precedent of the Eleventh Circuit. *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

[8]The insurance suit clause at issue in *Clay* provided that any action against the insurer under the policy must be commenced within six months after the discovery of a loss. Such clause, the purpose of which is effectively to shorten the statute of limitations, was valid in Illinois, but not valid in Florida. 319 F.2d at 507.

The insurer sought to have the claim dismissed on the basis of the policy suit clause. The resolution of the case depended on the court's answer to three questions: Whether, as a matter of *Florida law,* (1) the Florida statute is intended to apply to a policy issued outside Florida and (2) the particular losses at issue are covered by the policy; and whether, as a matter of *federal law,* (3) the Florida statute could be applied to the policy consistent with the Due Process Clause of the United States Constitution. *See id.* at 507. After determining that the federal constitutional issue could be avoided if either state law question was answered in the negative, we certified the two state law questions to the Florida Supreme Court.[9] The Florida Supreme Court answered both questions in the affirmative, thus necessitating our consideration of the federal constitutional question. However, in the course of passing on the state law questions, the Florida Supreme Court also purported to answer the federal question. In our post-certification review of the remaining federal question, we held that the Florida Supreme Court's interpretation of federal law does not bind us. *Id.* at 509.

This case is fundamentally different from *Clay.* Although we have said that "[t]his diversity case involves the intersection of insurance bad faith law and bankruptcy law," *Camp I,* 958 F.2d at 340, its resolution turns solely on a question of state law: Does the bankruptcy trustee have a bad faith cause of action against St. Paul? *See id.* at 344 (collecting cases from various jurisdictions

---

[9]We did so under mandate of the United States Supreme Court. *See Clay,* 319 F.2d at 508.

which have answered this question under applicable state law). The Florida Supreme Court answered this question in the affirmative. In a diversity case, we are, "in effect, only another court of the State." *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945); *see Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We do not sit as a reviewing court over the state supreme court. Thus, we must give effect to the Florida Supreme Court's *holding*—its answer to a question of state law—regardless of the reasoning used by that court to reach it. *See Silverstein v. Gwinnett Hosp. Auth.,* 861 F.2d 1560, 1569 (11th Cir.1988) ("It is well-settled that federal courts are bound by the interpretation of a state [law] by state courts."). That the court's *reasoning* might have included an "erroneous interpretation" of federal bankruptcy law is not relevant to our role of enforcing *state* law in this diversity action, provided the court's *holding* is not inconsistent with federal law.[10]

We conclude that our decision in *Camp III* is the law of this case, which binds us and the district court. More importantly, we

[10]Although we need not evaluate in detail the Florida Supreme Court's interpretation of federal bankruptcy law, we note that it is not necessarily inconsistent with our circuit precedent. Section 541(a)(1) provides that interest in property held by a debtor at the time of bankruptcy becomes part of the estate. 11 U.S.C. § 541(a)(1). We consider causes of action which have already accrued prior to bankruptcy as such property. *See Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988). However, we also recognize that interests in property are creatures of state law. *See Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (interpreting the term "interest of the debtor in property" in 11 U.S.C. § 547(b)). Thus, if the Florida Supreme Court chooses to recognize a potential bad faith claim as "property," it passes to the estate by operation of § 541(a)(1).

also conclude that the Florida Supreme Court's *Camp II* decision is an expression of *state* law and it, therefore, must be followed by us as well as future federal courts sitting in diversity cases, unless either the Florida Supreme Court or legislature changes the law.

## 2. Interpretation of *Camp II*

St. Paul's second contention is that the district court misinterpreted the *Camp II* decision. St. Paul argues that the Florida Supreme Court in *Camp II* changed the identity of the insured by holding that the bankruptcy estate became the insured under the policy and, thus, St. Paul owed a duty of good faith only to the estate, not to Kimbell. Under this interpretation of *Camp II,* St. Paul's pre-bankruptcy conduct in handling Kimbell's defense is not relevant to Venn's bad faith action and the introduction of evidence as to such conduct at trial would have been erroneous.

The Florida Supreme Court described an insured's action against its insurer for failure to settle a third party's claim in good faith as follows:

> An insurer who assumes the defense of the insured also assumes a duty to act in good faith and with due regard to the interests of the insured. *Boston Old Colony Ins. Co. v. Gutierrez,* 386 So.2d 783 (Fla.1980). More specifically, in actions by third parties against the insured, the insurer must act in good faith and be diligent in its effort to negotiate a settlement. *Auto Mutual Indemnity Co. v. Shaw,* 134 Fla. 815, 184 So. 852 (1938). The insurer breaches its duty if it fails to act in good faith and the third party obtains a judgment against the insured for an amount in excess of the policy coverage. *Id.*

*Camp II,* 616 So.2d at 14. The duty of good faith described by the court is a contractual duty and its breach gives rise to an action "ex contractu rather than in tort." *Government Employees Ins. Co.*

*v. Grounds,* 332 So.2d 13, 14 (Fla.1976) (per curiam); *Swamy v. Caduceus Self Ins. Fund, Inc.,* 648 So.2d 758, 760 (Fla.Dist.Ct.App.1994) (noting that "Florida is in the minority in this respect, as most states treat this as a tort claim or as a combination of tort and contract"). Therefore, before Kimbell filed for bankruptcy, St. Paul had a contractual duty towards Kimbell to negotiate and settle the Camp action in good faith, and its conduct in negotiating and refusing to settle with Camp gave rise to a potential claim, contingent on Camp obtaining an excess judgment. The Florida Supreme Court held that this contingent claim became the property of the bankruptcy estate. *Camp II,* 616 So.2d at 15. St. Paul's pre-bankruptcy conduct, therefore, is not only relevant to Venn's bad faith action; it is at the heart of such action.

Moreover, the Florida Supreme Court stated in *Camp II* that "[t]he bankruptcy estate stood in the shoes of the debtor and, *in effect,* the estate became the insured." *Id.* (emphasis added). We do not read this to signify that Kimbell was no longer the "insured" and that St. Paul's pre-bankruptcy conduct became wholly irrelevant to Venn's action. Rather, this language leads to the conclusion that, when Kimbell filed for bankruptcy, the estate not only took title to his contingent claim but also succeeded to his contract rights under the insurance policy. Indeed, the court said as much when it stated: "[I]n the instant case, the bankruptcy estate holds Dr. Kimbell's insurance policy as an asset." *Id.* Thus, St. Paul *also* owed a duty of good faith towards the bankruptcy estate (after it came into existence) and its

post-bankruptcy conduct with respect to the Camp claim is relevant.

In short, an insurer owes under Florida law a continuous duty to negotiate and settle in good faith a third party claim against its insured. This duty arises from the moment the insurer assumes the insured's defense and matures into a cause of action when the third party obtains a final judgment in excess of policy limits. *See Romano v. American Casualty Co.,* 834 F.2d 968 (11th Cir.1987) (dismissing a bad faith action filed by an insured before the excess judgment was affirmed on appeal as it was not yet final under state law). During that period, the duty is owed to the "insured"—in this case, Kimbell before bankruptcy, and Kimbell's estate after bankruptcy—and the insurer's conduct throughout this period is relevant.

St. Paul contends further that the district court erred in fixing the amount of damages to be the entire excess judgment obtained by Camp. St. Paul argues that the damages recoverable by Venn should be limited to the "harm" caused by the excess judgment. The Florida Supreme Court reasoned in *Camp II* that "[t]he excess judgment against Dr. Kimbell harmed his bankruptcy estate by increasing the debt of the estate to the detriment of its creditors." 616 So.2d at 15. St. Paul submits that there was no harm to the creditors due to the addition of the excess judgment to the estate's liabilities because Kimbell's estate was essentially a "no-asset" estate, containing no funds that could be disbursed to the creditors in the first place.

St. Paul's argument overlooks the unambiguous language of the Florida Supreme Court's decision in this case:

> The estate was damaged *by the addition of Mrs. Camp as an additional unsecured creditor,* a result that could have been avoided if St. Paul had settled her claim. As the trustee of the bankruptcy estate, Mr. Venn acted properly in filing a bad faith action *to recoup the excess judgment* for which the estate remains liable.

*Camp II,* 616 So.2d at 15 (emphasis added). Thus, the Florida Supreme Court defined the *harm,* under state law, to be the addition of an unsecured creditor and fixed the amount of *damages* to be the excess judgment. Under *Erie,* both the district court and this court must follow the state supreme court's explication of state law. We therefore affirm the district court's application of *Camp II* at trial.

B. *Prejudgment Interest*

Whether a successful claimant is entitled to prejudgment interest is a question of state law. *Royster Co. v. Union Carbide Corp.,* 737 F.2d 941, 948 (11th Cir.1984). We review the district court's determinations of state law *de novo. Russell,* 499 U.S. at 231, 111 S.Ct. at 1221; *Lexow,* 937 F.2d at 571. The district court held that, under Florida law, the estate is not entitled to prejudgment interest because, although it incurred a claim for Camp's excess judgment, it paid nothing on that claim. Our review of Florida law convinces us that the district court erred in applying the "out-of-pocket" rule to Venn's claim and we therefore reverse.

Venn contends that there is clear Florida precedent mandating the award of prejudgment interest to the claimant in an action for insurer failure to settle in good faith. Venn cites three cases for this proposition: *Auto Mutual Indemnity Co. v. Shaw,* 184 So. 852 (Fla.1938) (per curiam); *Liberty Mutual Insurance Co. v.*

*Davis,* 412 F.2d 475 (5th Cir.1969) (applying Florida law); and *General Accident Fire & Life Assurance Corp. v. American Casualty Co.,* 390 So.2d 761 (Fla.Dist.Ct.App.), *review denied,* 399 So.2d 1142 (Fla.1981).

In *Shaw,* the injured party who had prevailed against the insured filed suit seeking to recover the entire judgment from the insurer. The complaint alleged two counts, the first for damages up to the policy limit as a third-party beneficiary under a theory of contract law and the second for the excess judgment on a theory of insurer bad faith. *Shaw,* 184 So. at 853. The plaintiff prevailed on both counts at trial. The Florida Supreme Court affirmed the judgment as to the first count and reversed the judgment as to the second count after finding the evidence insufficient to support a claim of bad faith. On rehearing, the court acknowledged that the plaintiff was entitled to prejudgment interest on the damages recovered under the insurance policy (count one) as of the date of the underlying judgment. *Id.* at 860. Because it had reversed the judgment as to count two, however, the court had no occasion to address the issue of prejudgment interest with respect to bad faith.

In *Davis,* the former Fifth Circuit squarely held that a bad faith claimant is entitled to prejudgment interest on the authority of *Shaw. Davis,* 412 F.2d at 486. Generally, we are bound by a previous decision of this court unless it is overruled by the court sitting *en banc.* This rule applies with equal force to prior decisions involving federal law as well as state law. *Hattaway v. McMillian,* 903 F.2d 1440, 1445 n. 5 (11th Cir.1990). However, "if

*subsequent* decisions of the United States Supreme Court or the Florida courts cast doubt on our interpretation of state law, a panel would be free to reinterpret state law in light of the new precedents." *Id.* Our review of Florida Supreme Court decisions since 1985 convinces us that these decisions have significantly changed the law on the issue of prejudgment interest and have thus cast doubt on the precedential value of *Davis*.[11]

Prior to 1985, "[w]hat the Florida law is on prejudgment interest [was] far from clear." *Royster Co.,* 737 F.2d at 948. The decision of whether prejudgment interest should be awarded as a matter of law turned mostly on an elusive distinction between liquidated and unliquidated damages. *See id.* at 949-50. This distinction apparently did not apply to actions based on contract,

---

[11]Our conclusion is supported by the fact that the *Davis* court discussed the issue of prejudgment interest in a short paragraph, only citing *Shaw* as support. Although we conclude that *Davis* does not control our decision in this case, we nonetheless are troubled by the district court's failure to either mention *Davis* or analyze the extent to which it constitutes binding law in our circuit.

In *General Accident,* the Florida district court of appeals awarded prejudgment interest to an excess carrier who sued the insured's primary carrier for failure to settle within the primary policy limits. 390 So.2d at 766. In diversity cases, we generally adhere to the decisions of state intermediate appellate courts unless there is persuasive indication that the state's court of last resort would decide the issue otherwise. *Lexow,* 937 F.2d at 571. Here, although we eventually reach the same conclusion as that reached by the Florida district court of appeals in *General Accident,* the significant evolution of the law of prejudgment interest since 1985 persuades us that we cannot simply adhere to that decision. Furthermore, *General Accident* is arguably distinguishable from this case because it involved a claimant who had already satisfied the excess judgment, so the court had no occasion to consider the applicability of the "out-of-pocket" rule. *See* 390 So.2d at 763.

however, in which the Florida Supreme Court had allowed prejudgment interest from the date the debt is due or, stated differently, "from the time of accrual of the cause of action." *Parker v. Brinson Constr. Co.,* 78 So.2d 873, 875 (quoting *Zorn v. Britton,* 162 So. 879 (Fla.1935)). Since then, several decisions by the Florida Supreme Court have clarified the law on the question of prejudgment interest. In *Argonaut Insurance Co. v. May Plumbing Co.,* 474 So.2d 212 (Fla.1985), the Florida Supreme Court adopted a "loss theory" of prejudgment interest, holding that the interest constitutes "another element of pecuniary damages." *Id.* at 214. The loss theory recognizes that "interest is the natural fruit of money." *Id.* (quoting *Sullivan v. McMillan,* 19 So. 340 (Fla.1896)). The loss suffered by the plaintiff includes the wrongful deprivation of property by the defendant; the plaintiff is made whole by adding the prejudgment interest to the amount of damages determined by the fact finder. *Id.* at 215. Thus, "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss." *Id.; see also Lexow,* 937 F.2d at 571-72.

Several years later, in the context of tort law, the Florida Supreme Court held that "a claimant in a personal injury action is only entitled to prejudgment interest on past medical expenses when the trial court finds that the claimant has made *actual, out-of-pocket payments* on those medical bills at a date prior to the entry of judgment." *Alvarado v. Rice,* 614 So.2d 498, 500 (Fla.1993) (emphasis added). Here, the district court understood

*Argonaut* and *Alvarado* to have established a general rule requiring actual, out-of-pocket losses before prejudgment interest must be awarded under Florida law.  The district court noted that "[t]he actual loss will almost always be damage to property or the wrongful withholding of money."  *Venn I,* 169 B.R. at 739 (collecting cases).  Significantly, the court relied, in part, on *Cigna Property & Casualty Co. v. Ruden,* 621 So.2d 714 (Fla.Dist.Ct.App.1993), in which the Florida district court of appeals held that the holder of a marine insurance policy was entitled to costs and salvage expenses but not to prejudgment interest for the cost of items not yet paid for by the insured. *Id.* at 715-16.

Venn correctly notes, however, that a recent decision by the Florida Supreme Court reveals that both the district court and the *Ruden* Florida court were incorrect.  In *Lumbermens Mutual Casualty Co. v. Percefull,* 653 So.2d 389 (Fla.1995), the Florida Supreme Court resolved a conflict among lower Florida courts regarding the applicability of *Alvarado*'s "out-of-pocket" rule to contract actions.  In *Percefull,* the lower court had held that an insured is entitled to medical expenses payable under an insurance contract, as well as prejudgment interest, regardless of the fact that the insured had not paid these expenses and thus did not suffer any out-of-pocket loss.  *Percefull,* 653 So.2d at 389.  In affirming, the Florida Supreme Court disapproved of the *Ruden* court's extension of the reasoning underlying *Alvarado* to contract claims and held that "[w]hile the rule in *Alvarado* provided a narrow exception to the prohibition against prejudgment interest *in tort*

*cases,* it did not announce a new limitation on prejudgment interest in contract cases." *Id.* at 390 (emphasis added).

Venn has asserted a bad faith action against St. Paul for its failure to settle Camp's claim. Because such action sounds in contract under Florida law, *Grounds,* 332 So.2d at 14; *Swamy,* 648 So.2d at 760, Venn is entitled to prejudgment interest from the date the cause of action arose.[12] A cause of action for insurer bad faith generally arises on the date the excess judgment against the insured becomes final. *See Romano,* 834 F.2d at 969-70; *Cunningham v. Standard Guaranty Ins. Co.,* 630 So.2d 179, 181 (Fla.1994); *see also Blanchard v. State Farm Mut. Auto. Ins. Co.,* 575 So.2d 1289 (Fla.1991). Therefore, having prevailed in his bad faith action against St. Paul, Venn is entitled to prejudgment interest as of the date Camp's judgment against Kimbell became final.[13]

---

[12]St. Paul argues that the tort-contract dichotomy should not be dispositive of this case and reminds us that we have previously stated that this "dichotomy cannot easily or rationally be extended to actions for refusal to settle." *Davis,* 412 F.2d at 486. St. Paul's argument is unavailing because Florida courts have since spoken definitively with respect to this question of state law. Although most states treat an action for refusal to settle as a tort action or a combination of tort and contract, Florida consistently has treated it as purely *ex contractu. See Swamy,* 648 So.2d at 760 (citing *Grounds,* 332 So.2d 13). Our conclusion is strengthened by the Florida Supreme Court's treatment of cases involving uninsured motorist claims in *Percefull.* The Court approved the application of the out-of-pocket rule to these cases, stating: "While these uninsured motorist recoveries were based upon contracts of insurance, *they actually involved unliquidated personal injury damage claims." Percefull,* 653 So.2d at 390 (emphasis added). Venn's bad faith claim is neither unliquidated nor does it involve personal injury of the insured.

[13]Among the myriad arguments presented by St. Paul on the issue of prejudgment interest, St. Paul once again argues that Venn's special status as a bankruptcy trustee takes this case out of the general Florida rules governing prejudgment interest in contract actions. This argument is foreclosed by the Florida

Accordingly, we reverse the district court's denial of prejudgment interest. Because the "computation of prejudgment interest is merely a mathematical computation, ... a purely ministerial duty of the trial judge or clerk of the court," *Argonaut,* 474 So.2d at 215, we remand the case to the district court only for the purpose of amending the judgment to award Venn prejudgment interest on the damages at Florida's statutory rate[14] as of the date the underlying excess judgment in favor of Camp against Kimbell became final.

### III. CONCLUSION

In these appeals, St. Paul challenges the denial of its motions for judgment as a matter of law or, in the alternative, for a new trial or to alter or amend the judgment. Venn cross-appeals, arguing that the district court erred in ruling that Venn was not entitled to prejudgment interest and granting St. Paul's motion for judgment as a matter of law on the issue of punitive damages. Our review of applicable Florida law and the record establishes that the district court did not err in either denying St. Paul's post-trial motions on liability or granting St. Paul's motion on punitive damages. We conclude, however, that Venn is entitled to prejudgment interest. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND with instructions to amend the judgment for the purpose of awarding Venn prejudgment interest.

---

Supreme Court's decision that "[t]he bankruptcy estate st[ands] in the shoes of the debtor." *Camp II,* 616 So.2d at 15.

[14]The interest rate is specified in Fl.Stat. ch. § 687.01 (1995).