BARKETT, Circuit Judge,
dissenting:
The majority’s decision rests on the erroneous foundation that there is no substantive due process right to adult consensual sexual intimacy in the home and erroneously assumes that the promotion of public morality provides a rational basis to criminally burden such private intimate activity. These premises directly conflict with the Supreme Court’s holding in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003).
This case is not, as the majority’s demeaning and dismissive analysis suggests, about sex or about sexual devices. It is about the tradition of American citizens from the inception of our democracy to value the constitutionally protected right to be left alone in the privacy of their bedrooms and personal relationships. As Justice Brandéis stated in the now famous words of his dissent in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), when “[t]he makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness ... [t]hey conferred, as against the govern *1251 ment, the right to be let alone — the most comprehensive of rights and the right most valued by civilized men.” 277 U.S. at 478, 48 S.Ct. 564 (Branderis, J., dissenting) overruled by Berger v. State of New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
The majority claims that Lawrence, like Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), failed to recognize the substantive due process right of consenting adults to engage in private sexual conduct. Conceding that Lawrence must have done something, the majority acknowledges that Lawrence “established the unconstitutionality of criminal prohibitions on consensual adult sodomy.” Majority Op. at 1236. The majority refuses, however, to acknowledge why the Court in Lawrence held that criminal prohibitions on consensual sodomy are unconstitutional. This failure underlies the majority’s flawed conclusion in this case.
As explained more fully below, Lawrence held that a state may not criminalize sodomy because of the existence of the very right to private sexual intimacy that the majority refuses to acknowledge. Lawrence reiterated that its prior fundamental rights cases protected individual choices “concerning the intimacies of [a] physical relationship.” Lawrence, 123 S.Ct. at 2483 (internal quotation marks and citation omitted). Because of this precedent, the Lawrence Court overruled Bowers, concluding that Bowers had “misapprehended the claim of liberty there presented” as involving a particular sexual act rather than the broader right of adult sexual privacy. Id. at 2478. Instead of heeding the Supreme Court’s instruction regarding Bowers’ error, the majority repeats it, ignoring Lawrence’s teachings about how to correctly frame a liberty interest affecting sexual privacy.
Compounding this error, the majority also ignores Lawrence’s holding that although history and tradition may be used as a “starting point,” they are not the “ending point” of a substantive due process inquiry. Id. at 2480 (internal quotation marks and citation omitted). In cases solely involving adult consensual sexual privacy, the Court has never required that there be a long-standing history of affirmative legal protection of specific conduct before a right can be recognized under the Due Process Clause. To the contrary, because of the fundamental nature of this liberty interest, this right has been protected by the Court despite historical, legislative restrictions on private sexual conduct.[1] Applying the analytical framework of Lawrence compels the conclusion that the Due Process Clause protects a right to sexual privacy that encompasses the use of sexual devices.[2]
Finally, even under the majority’s own constrained and erroneous interpretation of Lawrence, we are, at a bare minimum, obliged to revisit this Court’s previous conclusion in Williams v. Pryor, 240 F.3d 944 (11th Cir.2001) (“Williams II”), that Ala *1252 bama’s law survives the most basic level of review, that of rational basis. See 240 F.3d at 949. That decision explicitly depended upon the finding in Bowers that the promotion of public morality provided a rational basis to restrict private sexual activity. Id. While the majority recognizes that Bowers has been overruled, it inexplicably fails to offer any explanation whatsoever for why public morality provides a rational basis to criminalize the private sexual activity in this case, when it was clearly not found to be a legitimate state interest in Lawrence.
For all of these reasons, which are amplified below, I dissent.

I. Lawrence Recognized a Substantive Due Process Right to Sexual Privacy,

[3]

There is no question that Lawrence was decided on substantive due process grounds. The doctrine of substantive due process requires, first, that every law must address in a relevant way only a legitimate governmental purpose. In other words, no law may be arbitrary and capricious but rather must address a permissible state interest in a way that is rationally related to that interest. As a consequence, any law challenged as violating a substantive due process right must survive rational-basis review.
However, the Supreme Court has found that some decisions are so fundamental and central to human liberty that they are protected as part of a right to privacy under the Due Process Clause,[4] and the government may constitutionally restrict these decisions only if it has more than an ordinary run-of-the-mill governmental purpose.[5] In such cases, the Court subjects these governmental restrictions to a heightened scrutiny, requiring that legislation be “narrowly drawn” to achieve a “compelling state interest.”[6] Included within this right to privacy is the ability to *1253 make decisions about intimate sexual matters.[7]
In invalidating the sodomy statute at issue in Lawrence, the Court reaffirmed this right to sexual privacy, finding that private homosexual conduct is likewise encompassed within it. From its opening paragraph, the Court explained the importance of the liberty at issue here:
Liberty protects the person from unwarranted government intrusions into a dwelling or other private places. In our tradition the State is not omnipresent in the home. And there are other spheres of our lives and existence, outside the home, where the State should not be a dominant presence ... The instant case involves liberty of the person both in its spatial and more transcendent dimensions.
Lawrence, 123 S.Ct. at 2475. The Lawrence Court noted in its opinion that it had granted certiorari specifically to consider “[w]hether Petitioners’ criminal convictions for adult consensual sexual intimacy in the home violate their vital interests in liberty and privacy protected by the Due Process Clause of the Fourteenth Amendment?” Id. at 2476 (internal quotation marks and citation omitted) (emphasis added). While the Court also granted cer-tiorari to address whether Texas’s sodomy statute violated the Equal Protection Clause,[8] the Court explicitly decided to rest its holding on a substantive due process analysis because it found that if a sodomy law “remain[ed] unexamined for its substantive validity, its stigma might remain even if it were not enforceable as drawn for equal protection reasons.”[9] Id. at 2482. The Court stated that the “case should be resolved by determining whether the petitioners were free as adults to engage in the private [sexual] conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment.” Id. at 2476.
In resolving this issue of whether the petitioners were “free as adults” to engage in “private [sexual] conduct,” the Court retraced its substantive due process jurisprudence by discussing the fundamental rights cases of Griswold, Eisenstadt,[10] Roe, and Carey and emphasized the breadth of their holdings as involving private decisions regarding intimate physical relationships. Id. at 2476-77, 2483. Beginning with Gristvold, the Lawrence *1254 Court found that its prior decisions confirmed “that the protection of liberty under the Due Process Clause has a substantive dimension of fundamental significance in defining the rights of the person” and “that the right to make certain decisions regarding sexual conduct extends beyond the marital relationship.” Id. at 2477 (summarizing Griswold, Eisenstadt, Roe, and Carey).
Because of the existence of this right to make private decisions regarding sexual conduct, the Lawrence Court was compelled to overrule the anomaly of Bowers, which had failed to acknowledge this right in permitting Georgia to criminalize sodomy. See Bowers, 478 U.S. at 194-96, 106 S.Ct. 2841. Lawrence found that at the time of the Bowers decision the Court’s prior holdings had already made “abundantly clear” that individuals have a substantive due process right to make decisions “concerning the intimacies of their physical relationship[s], even when not intended to produce offspring.” 123 S.Ct. at 2483 (quoting Bowers, 478 U.S. at 216, 106 S.Ct. 2841 (Stevens, J., dissenting)). The Lam-ence Court therefore concluded that “Bowers was not correct when it was decided.” Id. at 2484 (emphasis added).
Given these statements in Lawrence, I fail to understand the majority’s reliance on a footnote from the Supreme Court’s 1977 decision in Carey, where the Court indicated in dicta that it had not “definitively answered” the extent to which the Due Process Clause protects the private sexual conduct of consenting adults. Majority Op. at 1236, 1237 (citing Carey, 431 U.S. at 688 n. 5, 97 S.Ct. 2010).[11] Obviously, Carey does not resolve in any way the meaning of a case that comes twenty-six years later. Nor does it prevent Lawrence from answering the very question posed in Carey’s footnote. Lawrence does precisely this in affirming the right of consenting adults to make private sexual decisions. Moreover, this could not have been a new right. Carey’s footnote notwithstanding, the Lawrence Court determined that its pre-Bowers decisions had already recognized a right to sexual privacy. This is the only way to make sense of the Lawrence Court’s statements that Bowers was “not correct when it was decided,” and that its decisions before Bowers had already made “abundantly clear” that adults have a right to make decisions “concerning the intimacies of their physical relationship^.” Lawrence, 123 S.Ct. at 2483-84 (internal quotation marks and citation omitted).
In light of the Court’s conclusion that its prior decisions in Griswold, Eisenstadt, Carey, and Roe had already made “abundantly clear” that adults have a right to make intimate decisions about their sexual relationships, the majority cannot seriously maintain that this dissent “never identifies” a precedential source of the right to sexual privacy. Majority Op. at 1237. The majority’s argument that this dissent fails to identify a textual source of the right to sexual privacy is equally untenable. Id. As noted below, the Lawrence Court held that the petitioners’ “right to liberty under the Due Process Clause gives them the full right to engage in their [private sexual] conduct without intervention of the government.” 123 S.Ct. at 2484 (emphasis added). The Court could not have been more clear that the petitioners’ right to engage in private sexual conduct has its textual locus in the Due Process Clause.
Bowers erred because it “misapprehended the claim of liberty there presented” *1255 when it framed the issue before it as whether the Constitution protects “a fundamental right to engage in consensual sodomy”:
To say that the issue in Bowers was simply the right to engage in certain sexual conduct demeans the claim the individual put forward, just as it would demean a married couple were it to be said marriage is simply about the right to have sexual intercourse. The laws involved, in Bowers and here are, to be sure, statutes that pugport to do no more than prohibit a particular sexual act. Their penalties and purposes, though, have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home.
Lawrence, 123 S.Ct. at 2478 (emphasis added). In other words, Bowers departed from the proper inquiry by focusing on a particular sexual act instead of upon the right to sexual privacy, which encompasses acts of adult consensual sexual intimacy. As I explain in the next section, the majority repeats the very mistake made in Bowers by focusing on whether there is a right to engage in a particular sexual act — here the use of sexual devices — rather than asking whether the conduct burdened by Alabama’s statute involves private consensual sexual intimacy. As Lawrence demon-states, sexual intimacy is inevitably demeaned, and its importance to the private life of the individual trivialized, when it is reduced to a particular sexual or physical act.
As the Lawrence Court explained, the proper inquiry is simply whether adults have a right to engage in “private [sexual] conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment.” Id. at 2476. In answering this question, Lawrence expressly adopted the reasoning of Justice Stevens’ dissent in Bowers:
[Individual decisions by married persons, concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of “liberty” protected by the Due Process Clause of the Fourteenth Amendment. Moreover, this protection extends to intimate choices by unmarried as well as married persons.
Id. at 2483 (quoting Bowers, 478 U.S. at 216, 106 S.Ct. 2841 (Stevens, J., dissenting)) (emphasis added). Because the private conduct at issue in Lawrence also concerned the “intimacies” of a “physical relationship,” the Court held that the petitioners’ “right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government.”[12] Id. at 2484. *1256 The Lawrence Court’s answer to its question of whether adults have a right to engage in private sexual conduct is clearly a binding holding. I know of no principle of interpretation that supports, in any way, the majority’s characterization as “scattered dicta’’[13] the Supreme Court’s direct response to the question it granted certio-rari to answer and that it found was necessary to resolve before disposing of the case. See id. at 2476 (“We conclude the case should be resolved by determining whether the petitioners were free as adults to engage in the private [sexual] conduct in the exercise of their liberty under the Due Process Clause of the Fourteenth Amendment.”).
Like both Bowers and Lawrence, this case involves “the most private human conduct, sexual behavior,” occurring “in the most private of places, the home.” Lawrence, 123 S.Ct. at 2478. Alabama’s statute, by prohibiting the sale of sexual devices, thus affects the same “vital” liberty interest in adult consensual sexual intimacy threatened by the sodomy statutes in Bowers and Lawrence and should likewise be invalidated.[14] I believe the majority errs in its strained effort to avoid the fair import of a Supreme Court precedent.

II. The Majority Ignores Lawrence’s Teaching Regarding the Proper Framing of a Liberty Interest and the Appropriate Use of History.

Because the majority erroneously concludes that Lawrence did not reaffirm a substantive due process right to sexual privacy, it attempts to conduct a Glucks-berg analysis with respect to whether to recognize a “hitherto unarticulated fundamental right.” Majority Op. at 1234, 1240. In doing so, the majority not only errs by proceeding as if Lawrence and its prescriptions for conducting a fundamental rights analysis do not exist, but also errs by inventing new criteria that are not supported by Glucksberg, Flores, or any other case law.[15]
«F?.
Regardless of the majority’s belief that Lawrence did not recognize a substantive due process right, it cannot then simply conduct an analysis that ignores Lawrence’ s clear statements about the erroneous analytical framework of Bowers and repeat that methodology here. Even if Lawrence were not itself a fundamental rights decision, it remains the case that Bowers conducted a fundamental rights analysis that Lawrence found to be deeply flawed. Lawrence’s repudiation of Bowers’ substantive due process approach cannot be dismissed as dicta, since overruling Bowers was necessary to the disposition of the decision in Lawrence. Lawrence, 123 S.Ct. at 2476 (“[W]e deem it necessary to reconsider the Court’s holding in Bowers.”). Therefore, Lawrence, coming after Glucksberg, must be read as providing binding guidance about how to properly analyze a liberty interest affecting sexual privacy.

*1257
A. The Proper Framing of a Liberty Interest

Just as the Bowers Court framed the question before it as “whether the Federal Constitution confers a fundamental right upon homosexuals to engage in sodomy,” Bowers, 478 U.S. at 190, 106 S.Ct. 2841, the majority also mistakenly reduces the asserted liberty interest here to a particular sexual act, asking not whether consenting adults have a right to sexual privacy, but whether an Alabama citizen has the right to use sex toys.[16] See, e.g., Majority Op. at 1241. The Lawrence Court explained that the narrow framing of the question in Bowers “demean[ed] the claim” set forth and “disclose[d] the Court’s own failure to appreciate the extent of the liberty at stake” in that case. 123 S.Ct. at 2478 (Bowers “misapprehended the claim of liberty there presented to it”). The Lawrence Court further explained that “[t]he laws involved in Bowers and here are, to be sure, statutes that purport to do no more than prohibit a particular sexual act. Their penalties and purposes, though, have more far-reaching consequences, touching upon the most private human conduct, sexual behavior, and in the most private of places, the home.” Id. at 2478 (emphasis added). In exactly the same manner, the majority’s characterization of the right at issue here as involving the right to use certain sexual devices severely discounts the extent of the liberty at stake in this case. Alabama’s law not only restricts the sale of certain sexual devices, but, like the statute in Lawrence, burdens private adult sexual activity within the home.[17]

B. The Use of History and Tradition

In addition to repeating the analytical mistake of Bowers in narrowly framing the right at issue, the majority also errs in its use of history. The majority claims that under Glucksberg, the district court was wrong to rely on a history and tradition of state non-interference with the private sexual lives of adults as a basis to recognize a right to sexual privacy.[18] According to the majority, Glucksberg requires that there be a long-standing history of affirmative legal protection of specific conduct before a right can be recognized under the Due Process Clause.[19]
*1258 Contrary to the majority’s claim, neither Glucksberg nor any other relevant Supreme Court precedent supports the requirement that there must be a history of affirmative legislative protection before a right can be judicially protected. The majority simply invents this requirement, effectively redefining the doctrine of substantive due process to protect only those rights that are already explicitly protected by law. Such a requirement ignores not only Lawrence but also a complete body of Supreme Court jurisprudence. Had the Supreme Court required affirmative governmental protection of an asserted liberty interest, all of the Court’s privacy cases would have been decided differently. For instance, there was no lengthy tradition of protecting abortion and the use of contraceptives, yet both were found to be protected by a right to privacy under the Due Process Clause.[20] In its analysis, the trial court here correctly considered the history of non-interference by government. Its analysis was expressly validated by Lawrence, in which there was no history of affirmatively protecting the right to engage in consensual sodomy. In overruling Bowers, the Lawrence Court noted with approval Justice Powell’s observation in Bowers that “[t]he history of nonenforcement [of sodomy laws] suggests the moribund character today of laws criminalizing this type of private, consensual conduct.” 123 S.Ct. at 2481 (internal quotation marks and citation omitted) (emphasis added). Therefore, the majority is plainly incorrect that there must be a history and tradition of laws protecting the right to use sex toys.[21]
Moreover, while history and tradition can be important factors, they are not the only relevant considerations in a substantive due process inquiry related to sexual privacy. See id. at 2480-81. As the Lawrence Court emphasized, “[h]istory and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry.” Id. at 2480 (internal quotation marks and citation omitted). Furthermore, like the district court in this case, Lawrence looked to modern trends and practices. The Lawrence Court wrote:
[W]e think that our laws and traditions in the past half century are of most relevance here. These references show an emerging awareness that liberty gives substantial protection to adult persons in deciding how to conduct their private lives in matters pertaining to sex.
Id. (emphasis added). Given this unequivocal statement, the majority cannot legitimately criticize the district court for its attention to “contemporary practice and attitudes with respect to sexual conduct and sexual devices.” Majority Op. at 1242. In light of all relevant Supreme Court precedents, the trial court — not the majority — strikes the proper balance between a *1259 concern with history and contemporary practice, and articulates a careful and correct description of the asserted liberty interest.[22]

III. Under Lawrence, “Public Morality” Cannot Be Deemed a Legitimate Governmental Purpose for Criminalizing Private Sexual Activity.

The majority states that Lawrence held that sodomy laws fail rational-basis review.[23] However, the majority neglects to address whether Alabama’s statute has a rational basis even though Alabama relies upon the same justification for criminalizing private sexual activity rejected by Lawrence — public morality. In Lawrence, Texas had explicitly relied upon public morality as a rational basis for its sodomy law.[24] Lawrence summarily rejected Texas’s argument, holding that the sodomy law 1!further[ed] no legitimate state interest which can justify its intrusion into the personal and private life of the individual.” 123 S.Ct. at 2484 (emphasis added). In Williams II, this Court previously upheld Alabama’s law on rational basis grounds, relying on the now defunct Bowers to conclude that public morality provides a legitimate state interest. 240 F.3d at 949-50 (the “crafting and safeguarding of public morality has long been an established part of the States’ plenary police power to legislate and indisputably is a legitimate government interest under rational basis scrutiny”). Obviously, now that Bowers has been overruled, this proposition is no longer good law and we must, accordingly, revisit our holding in Williams 77.[25] Yet despite the Lawrence Court’s rejection of public morality as a legitimate state interest that can justify criminalizing private consensual sexual conduct, the majority, although acknowledging that the district court will have to do so, never once addresses how our holding in Williams II can remain good law. Justice Scalia, in his Lawrence dissent, specifically noted that *1260 the principles we relied upon in our decision in Williams II have been “discarded” by Lawrence:
It seems to me that the “societal reliance” on the principles confirmed in Bowers and discarded today has been overwhelming. Countless judicial decisions and legislative enactments have relied on the ancient proposition that a governing majority’s belief that certain sexual behavior is “immoral and unacceptable” constitutes a rational basis for regulation. See, e.g., Williams v. Pryor, 240 F.3d 944, 949 (C.A.11 2001) (citing Bowers in upholding Alabama’s prohibition on the sale of sex toys on the ground that “[t]he crafting and safeguarding of public morality ... indisputably is a legitimate government interest under rational basis scrutiny”).
123 S.Ct. at 2490 (Scalia, J., dissenting) (emphasis added).
Whether Alabama’s legislature believes that the use of sex toys may be improper or immoral, the Supreme Court has explained that “[tjhese considerations do not answer the question before us, however. The issue is whether the majority may use the power of the State to enforce these views on the whole society through operation of the criminal law. Our obligation is to define the liberty of all, not to mandate our own moral code.” Id. at 2480 (discussing traditional moral views disapproving of homosexuality) (internal quotation marks and citation omitted).

IV. Conclusion

For all the reasons explicated above, Alabama’s statute should be invalidated because it violates a substantive due process right of adults to engage in private consensual sexual activity and because the state’s reliance on public morality fails to provide even a rational basis for its law. •Ignoring Lawrence, the majority turns a reluctance to expand substantive due process into a stubborn unwillingness to consider relevant Supreme Court authority. I dissent.

. See Roe v. Wade, 410 U.S. 113, 139, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); see also Carey v. Population Services Int'l, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct 1678, 14 L.Ed.2d 510 (1965).

. As the majority acknowledges, there is no constitutional distinction between a ban on the private use of sex toys and a ban on the sale of sex toys. See Majority Op. at 1242 ("For purposes of constitutional analysis, restrictions on the ability to purchase an item are tantamount to restrictions on the use of that item.”). Accordingly, Alabama cannot be permitted to accomplish indirectly what it is not constitutionally permitted to do directly.

. I have also developed these arguments in my dissent to the denial of rehearing en banc in Lofton v. Sec. of Dept. of Children and Family Servs., 358 F.3d 804, (11th Cir.2004) (Barkett, J., dissenting).

. The Supreme Court has explained that this right includes the ability of adults to make decisions relating to the right to abortion, Roe, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; contraception, Eisenstadt, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 and Griswold, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510; marriage, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); family relationships, Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); procreation, Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

. The majority acknowledges that at issue in this case is "the Due Process Clause's substantive component, which courts have long recognized as providing 'heightened protection against government interference with certain fundamental rights and liberty interests.' " Majority Op. at 1235 (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000)).

. Roe, 410 U.S. at 155, 93 S.Ct. 705 ("Where certain fundamental rights are involved, the Court has held that regulation limiting these rights may be justified only by a compelling state interest" and that such legislation "must be narrowly drawn”) (internal quotation marks and citation omitted). The only sexual privacy case where the Court did not use this language was in Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), where it analyzed civil burdens on a woman's right to abortion, not an outright criminal ban. The Court found that a state regulation that had “the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus” would place an "undue burden” on the right to abortion and therefore be unconstitutional. Casey, 505 U.S. at 877, 112 S.Ct. 2791.

. See, e.g., Carey, 431 U.S. at 685, 97 S.Ct. 2010 and Griswold, 381 U.S. at 486, 85 S.Ct. 1678 (right to use contraception); Casey, 505 U.S. at 869, 112 S.Ct. 2791 (right to seek out an abortion).

. Unlike the sodomy statute at issue in Lawrence, which only applied to homosexual sexual conduct, the Georgia statute in Bowers criminalized acts of sodomy engaged in by both heterosexuals and homosexuals. See Bowers, 478 U.S. at 188 n. 1, 106 S.Ct. 2841. The Lawrence Court indicated that the sodomy statute could have been invalidated using an equal protection analysis. 123 S.Ct. at 2482. Indeed, this was the conclusion of Justice O'Connor in her concurrence. Id. at 2484-88 (O’Connor, J., concurring).

. The Lawrence majority went on to state that "[wjhen homosexual conduct is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination both in the public and in the private spheres.” 123 S.Ct. at 2482.

.Although Eisenstadt was decided on equal protection grounds, the Court in Lawrence noted that Eisenstadt “went on to state the fundamental proposition that the law impaired the exercise of ... personal rights.” 123 S.Ct. at 2477. Further, while Lawrence cited Romer v. Evans, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996), as an example of how Bowers had been cast into doubt, the Court immediately declined to decide the case under Romer s equal protection rationale, instead insisting that the decision be resolved on substantive due process grounds. Id. at 2482.

. In Carey, the Court wrote that it had “not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating (private consensual sexual) behavior among adults.” 431 U.S. at 688 n. 5, 97 S.Ct. 2010 (internal quotation marks and citation omitted).

. The majority argues that acknowledging a right of adult sexual privacy would lead to the invalidation of laws banning, among other things, prostitution, incest, the use of hallucinogenic substances, child pornography, and bestiality. See Majority Op. at 1239, 1240 n. 12. Here again, the majority fails to credit Lawrence, which clearly stated, for purposes of guiding future courts, what the right of consensual adult sexual privacy is and is not about:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.
123 S.Ct. at 2484 (emphasis added). As the Court explained, as a "general rule,” the state or a court should not attempt "to define the meaning of [a] relationship or to set its boundaries absent injury to a person or abuse of an institution the law protects.” Id. at 2478 (emphasis added). For example, in the case of prostitution, there may be a threat that *1256 individuals will be harmed, while adult incest poses a threat to the institution of the family and involves a "relationship[ ] where consent might not easily be refused.” Id. at 2484.

. Majority Op. at 1236.

. As the majority acknowledges, the Supreme Court has held that the "same test must be applied to state regulations that burden an individual's right ... by substantially limiting access to the means of effectuating that decision as is applied to state statutes that prohibit the decision entirely.” Majority Op. at 1242 (quoting Carey, 431 U.S. at 688, 97 S.Ct. 2010).

.See Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

.The majority erroneously insists that “the scope of the liberty interest at stake here must be defined in reference to the scope of the Alabama statute,” Majority Op. at 1241, even though Lawrence recognized that the liberty interest threatened by sodomy statutes could not be defined by the particular conduct those statutes prohibited. Selectively quoting from the district court’s opinion, the majority repeatedly insists that the right at issue here is the "right to use sexual devices like ... vibrators, dildos, anal beads, and artificial vagi-nas.” Majority Op. at 1244, 1247, 1250. In contrast to the majority, the district court properly framed the question in terms of the broader right to sexual privacy. The district court framed the inquiry as follows: “Does th[e] fundamental right of sexual privacy between married and unmarried adults in private, consensual, sexual relationships encompass a right to use sexual devices like the vibrators, dildos, anal beads, and artificial vaginas distributed by the vendor plaintiffs in this action?” Williams v. Pryor, 220 F.Supp.2d 1257, 1296 (N.D.Ala.2002) ("Williams III").

. See Majority Op. at 1242 (“For purposes of constitutional analysis, restrictions on the ability to purchase an item are tantamount to restrictions on the use of that item.”).

. The district court found that "history and contemporary practice demonstrate a conscious avoidance of regulation of [sexual] devices by the states.” Williams III, 220 F.Supp.2d at 1296. The majority dismisses this analysis. See Majority Op. at 1242 (“[R]ather than look for a history and tradition of protection of the asserted right, the district court asked whether there was a history and tradition of state non-interference with the right.”).

. Majority Op. at 1244 (noting that the district court's analysis was “not based on any *1258 evidence of a history and tradition of affirmative protection of this right [to use sexual devices]”).

. In Roe, for instance, the Court's historical analysis of Anglo-American statutory and common law served to provide evidence of the relatively recent (late nineteenth-century) vintage of state restrictions on abortion, not to demonstrate a tradition of affirmative protection of the right to an abortion. 410 U.S. at 132-41, 93 S.Ct. 705. Despite the lack of a history of protecting the right to abortion, the Roe Court nevertheless held that the "right of privacy ... is broad enough to encompass a woman's decision whether or not to terminate her pregnancy.” Id. at 152-56, 93 S.Ct. 705.

. The majority also claims that the district court should have limited its historical analysis to legislation involving the use of sexual devices. The proposal for such an unjustifiably narrow inquiry flows from the majority's error in framing the right at issue too narrowly-

. Williams III, 220 F.Supp.2d at 1259, 1296 ("[P]laintiffs' evidence establishes that there exists a constitutionally inherent right to sexual privacy that firmly encompasses state noninterference with private, adult, consensual sexual relationships” and that this right, "even in its narrowest form, protects plaintiffs’ use of sexual devices like those targeted” by Alabama’s law).

. Majority Op. at 1236 (noting that Lawrence "ultimately applied rational-basis review” to strike down Texas's sodomy statute).

. Respondent's Brief in Lawrence v. Texas, 2003 WL 470184 at *48 (U.S. Feb. 7, 2003) {"The prohibition of homosexual conduct in [Texas’ sodomy statute] represents the reasoned judgment of the Texas Legislature that such conduct is immoral and should be deterred. ... [L]ong-established principles of federalism dictate that the Court defer to the Texas Legislature’s judgment and to the collective good sense of the people of the State of Texas, in their effort to enforce public morality and promote family values through the promulgation of penal statutes such as [the sodomy statute].”) (internal footnote omitted) (emphasis added); see also Transcript of Oral Argument in Lawrence v. Texas, 2003 WL 1702534 at *38 (U.S. March 26, 2003) (state’s counsel arguing that sodomy law was justified because "Texas has the right to set moral standards and can set bright line moral standards for its people.”).

.The majority states that "[t]he only question on this appeal is whether the [Alabama] statute, as applied to the involved users and vendors, violates any fundamental right protected under the Constitution.” Majority Op. at 1234. Appellants, however, claim that Alabama's statute violates the Due Process Clause, which necessarily includes a claim that the statute fails rational-basis review. On remand, the district court must consider whether our holding in Williams II that Alabama's law has a rational basis remains good law now that Bowers has been overruled. See, e.g., Venn v. St. Paul Fire & Marine Ins. Co., 99 F.3d 1058, 1063 (11th Cir.1996) (noting that the "law of the case ... does not apply to bar reconsideration of an issue when ... controlling authority has since made a contrary decision of law applicable to that issue”).